Gilbert *v.* Korvette's, Inc. et al., Appellants.

Argued September 15, 1972.  Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*Peter P. Liebert, 3rd,* with him *Liebert, Short, Fitz-patrick & Lavin,* for defendant, appellant.

*William G. Klenk, II,* with him *Miller, Sidkoff, Pincus, Greenberg & Golden,* for defendant, appellant.

*William L. Meritz,* with him *Prince and Meritz,* for appellee.

OPINION BY HOFFMAN, J., December 11, 1972:

We are presented on appeal with the question of whether either or both a department store-operator of an escalator and the company which manufactures and services said instrumentality may be held liable under the theory of res ipsa loquitur to a plaintiff who is injured while a passenger on the escalator in defendant's store.

This appeal arises from an action for damages for personal injuries sustained by Creston Gilbert, then a minor under the age of four, on August 20, 1960, while in the store of E. J. Korvette, Inc. The minor-plaintiff, who was wearing high sneakers or basketball shoes, was on the escalator with his grandfather, Creston C. Mueller and his sister, Vicky, in Korvette's department store at Welsh Road & Roosevelt Boulevard in Philadelphia. The testimony discloses that all three passengers were standing on one step of the down escalator with the grandfather in the middle, holding the hand of each child. When they reached the bottom of the escalator, Mr. Mueller testified that he raised both his hands to help guide and assist the children off the escalator. While he and Vicky stepped off safely, minor-plaintiff was unable to follow as his foot was caught in the combs of the step. Minor-plaintiff's foot was pulled into the comb plate, and could not be extricated until a crowbar was used, resulting in the destruction of two of the steps. Injuries resulted in a partial amputation of minor's left great toe, and general disfiguration and deformity of the foot.

Plaintiffs sued the store and the company which had manufactured, installed and contracted to service the escalator on a weekly basis. Korvette's employees started and stopped the escalator, checked to see if it was operating properly, and cleaned it on a daily basis. Although plaintiffs originally had set forth in the complaint specific acts of negligence on the part of the defendants, the case was submitted on a theory of res ipsa loquitur against both of the defendants. The trial judge charged that if the jury found that both defendants had exercised joint exclusive control of the instrumentality, a verdict could be returned against both defendants under the theory of res ipsa loquitur.[1] The jury then found in favor of the minor child in the sum of $35,000 and in favor of the minor's parents in the sum of $5,000.

In the law of torts, it is a universally established rule that the burden of proving negligence lies upon the one who alleges it. Exception to this general rule has been established by the existence of the doctrine of res ipsa loquitur and the exclusive control doctrine. In those cases, our courts have permitted a finding of negligence from purely circumstantial evidence.

## I. The Doctrine of Res Ipsa Loquitur

Traditionally, three factors must coexist in order to invoke the doctrine of res ipsa loquitur: (a) the defend-

---

[1] A portion of Judge WEINROTT's extensive charge dealing with the applicability of res ipsa loquitur to Otis, stated as follows: "As an escalator and an elevator perform the like services of conveying people from one elevation to another, they are subject to like duties and responsibilities . . . . Hence, the rule that the elevator is deemed a common carrier applies equally to an escalator . . . . [I]f you find that this escalator was under the joint exclusive control of both defendants, then you should apply the rules of res ipsa loquitur to both defendants."

ant must owe to the plaintiff a duty of the highest degree of care; (b) the instrumentality which caused the accident was in the exclusive control of the defendant; *and,* (c) that which happened was something that ordinarily would not have occurred if the defendant had exercised the high degree of care which the law imposes upon him. *Zahniser v. Pa. Torpedo Co.,* 190 Pa. 350, 42 A. 707 (1899); *Alexander v. Nanticoke Light Co.,* 209 Pa. 571, 58 A. 1068 (1904).

Where the duty is absolute or there exists an obligation practically amounting to that of an insurer, the courts have applied the doctrine with some degree of uniformity. Because of the attendant imposition of a presumption of negligence,[2] however, such application has been limited in this jurisdiction to a very narrow group of cases, the major portion of which are common carrier cases.[3] It is generally recognized in all juris-

---

[2] In *MacDonald v. Penna. R.R. Co.,* 348 Pa. 558, 566-567, 36 A. 2d 492 (1944), our Supreme Court illustrated just how heavily such a presumption would weigh on a defendant: "In the instant case, the burden of proof was on the plaintiff. When plaintiff proved that her son while a passenger on defendant's train was killed by the derailment of that train she met the burden of proof initially resting upon her, and if no further evidence had been offered by either side, the jury should have returned a verdict for the plaintiffs, because upon proof of the facts just stated a 'presumption' arose that the child's death resulted from the defendant's negligence . . . the burden of producing evidence to neutralize the inference which the jury in the absence of countervailing evidence would draw legitimately from the evidence produced by the plaintiff." See also, *McKnight v. S. S. Kresge Co.,* 285 Pa. 489, 493, 132 A. 575 (1926).

[3] As was pointed out in the Third Circuit opinion of *Sierocinski v. E. I. Du Pont de Nemours & Co.,* 118 F. 2d 531, 535 (3d Cir. 1941), "The rule of res ipsa loquitur has been limited in its application by the courts of Pennsylvania to cases involving injury to passengers through the transportation operations of common carriers or to patrons of utilities dispensing a service which, if not properly managed and controlled, may readily prove dangerous. See

364

dictions that a common carrier must exercise the highest practical degree of care in order to protect and safeguard its passengers. An injury resulting to a passenger through any of the appliances of transportation raises a presumption of negligence which the carrier must rebut. *Furby v. Pa. R.R. Co.*, 286 Pa. 85 (1926). Even as to the common carrier cases, however, the doctrine has been limited in application to only those cases where the injury arises out of the transportation function in the relationship of carrier and passenger. *Patterson Co. v. Pittsburgh Rwys. Co.*, 37 Pa. Superior Ct. 212 (1908); *Zercher v. Phila. Rapid Transit Co.*, 50 Pa. Superior Ct. 324 (1912); *Nebel v. Burrelli*, 352 Pa. 70, 41 A. 2d 873 (1945).

The reluctance of our courts to invoke this doctrine is not surprising, as the attendant consequences can be insurmountable to a defendant unable to find a reason for the happening of a particular accident. "Being in derogation of the general principal that 'the negligence charged must be established by evidence', the rule [res ipsa loquitur] has been thus narrowly restricted in its application. Norris v. Philadelphia Electric Co., 334 Pa. 161, 163, 5 A. 2d 114 (1939)"; *Sierocinski v. E. I. Du Pont de Nemours & Co.*, supra.

A group of cases to which this doctrine has been applied involves the injury of a passenger on an elevator or escalator. In those cases, the *owner* or *operator* of such an instrumentality has been held responsible as a common carrier, and therefore when his instru-

Burns v. Pennsylvania Railroad Co., 294 Pa. 277, 144 A. 103; Delaney v. Buffalo, Rochester & Pittsburgh Ry. Co., 266 Pa. 122, 109 A. 605; Wood et al. v. Philadelphia Rapid Transit Co., 260 Pa. 481, 104 A. 69; Delahunt v. United Telephone & Telegraph Co., 215 Pa. 241, 64 A. 515, 114 Am. St. Rep. 958." See also, Gettys, "The Res Ipsa Loquitur Rule As Applied in Pennsylvania", 11 Temple L. Q. 191 (1937).

mentality brings about an injury to a passenger he has been held liable under the theory of res ipsa loquitur. *Petrie v. Kaufmann & Baer Co.*, 291 Pa. 211, 139 A. 878 (1927) ; *McKnight v. S. S. Kresge Co.*, supra. At no time, however, has that doctrine been extended to the service company which installed the device and contracted to maintain and inspect it on a periodic basis.

The appellee relies heavily on *Loch v. Confair*, 372 Pa. 212, 93 A. 2d 451 (1953), which held that both the bottling company and the retailer could be liable to the plaintiff on a theory of res ipsa loquitur [and exclusive control doctrine] for injuries sustained from an exploding soda bottle. The Court determined that the only cause of the rupture could have been due to negligence on the part of one or both of the defendants, either in the process of bottling or in the handling of the product; additionally, it was apparent, the Court said, that the circumstances of the case were such that if any explanation of how the accident occurred or what had caused it was forthcoming, it could only be provided by the defendants. As the Court said at p. 217: "Manifestly it would be entirely beyond the ability of the plaintiffs to ascertain and establish which of these possibilities was in fact the cause of the accident, whereas the defendant Beverage Company could readily explain the equipment and the methods employed by it in bottling the ale and the defendant A. & P. Company was equally in a position to explain the manner in which it handled, displayed and protected the bottles placed on its shelves for sale. It would seem, therefore, notwithstanding the limitations on the applicability of the doctrine of res ipsa loquitur and exclusive control previously referred to, that reason and justice alike should entitle plaintiffs to the benefits of those methods of establishing a prima facie case."

*Loch v. Confair*, supra, couched in such pervasive language, was a considerable departure from what had

been a rarely invoked doctrine. It is significant that our courts did not see fit to extend the doctrine in any case after *Loch,* and instead reverted to the strict application of res ipsa to situations where the defendant had traditionally owed plaintiff the highest practical degree of care. It would seem that because the subject matter of *Loch*—the exploded bottle—had been destroyed, and because the circumstances of the case made it impossible for plaintiffs to discover the cause of the accident, the Court strained to reach its result in applying the doctrine to a plaintiff who was unable to produce a scintilla of evidence to indicate negligence.[4]

As a vague and potentially prejudicial doctrine, legal precedent and common sense militate against imposition of a presumption of negligence by merely showing that an accident occurred through an instrumentality controlled by one or more defendants.

## II. The Exclusive Control Doctrine

Concomitant with the doctrine of res ipsa loquitur, Pennsylvania has developed the doctrine of exclusive control. Although the doctrines are somewhat interrelated and often confused, they are distinct. The doctrine of exclusive control has been said to apply only when all of the following elements are found to exist: (a) where the thing which caused the accident is un-

---

[4] It should be pointed out that the instant case was instituted in 1962, prior to the adoption of the Restatement of Torts, 2d, §402 A, by our Supreme Court in *Webb v. Zern,* 422 Pa. 424, 220 A. 2d 853 (1966). Section 402 A was adopted to correct the deficiencies in the law that had previously denied plaintiffs' recovery. Included in that category were cases in which plaintiffs were unable to either prove specific acts of negligence or could not qualify under the strict requirements of the doctrine of res ipsa loquitur or the exclusive control doctrine. See, *MacDougall v. Ford Motor Co.,* 214 Pa. Superior Ct. 384, 257 A. 2d 676 (1969).

der the exclusive control of or was made or manufactured by the defendant; *and* (b) the accident or injury would ordinarily not happen if the defendant exercised due care, or made or manufactured the article with due care; *and* (c) where the evidence of the cause of the injury or accident is not equally available to both parties, but is exclusively accessible to and within the possession of the defendant; *and* (d) the accident itself is very unusual or exceptional and the likelihood of harm to plaintiff or one of his class could reasonably have been foreseen and prevented by the exercise of due care; *and* (e) the general principles of negligence have not theretofore been applied to such facts. *Izzi v. Philadelphia Transportation Co.,* 412 Pa. 559, 195 A. 2d 784 (1963).

When this doctrine is applied, it is important to note that "the exclusive control doctrine has generally been held *not* to create a presumption of negligence." Meyer, "Proof of Negligence", 41 Temple L. Q. 383, 389 (1968). As our Supreme Court said in *Izzi,* supra, at p. 566: "It is well established that the doctrine raises *an inference* of negligence and shifts to the defendant the burden of going forward with the evidence, and thus takes all such cases to the jury."

Unlike the doctrine of res ipsa loquitur, the exclusive control doctrine does not require that the defendant owe the plaintiff the highest practical degree of care similar to that owed by a common carrier. This requirement is relaxed ostensibly because the application of this doctrine only creates an inference and not the presumption of negligence imposed by application of the doctrine of res ipsa loquitur.

The distinction between the two doctrines becomes vital and crucial, when one recognizes the difference in the *quantum of proof* which is placed upon a defendant under each theory. As our Supreme Court, emphasiz-

ing this distinction, said, "In actions to recover for damages caused by negligence the burden is upon the plaintiff to furnish proof of such negligence, but it is not necessary, or indeed possible, in all cases to establish such proof by positive testimony, and what the rule of 'exclusive control' does in situations where it is applicable is to shift to the defendant the burden of coming forward with the evidence . . . . It is not that negligence is presumed in such cases from the mere happening of the accident but that the circumstances amount to evidence from which it may be inferred by the jury . . . . As expressed in *Wright v. Streassley,* 321 Pa. 1, 5, 182 A. 682, 684, 'There is a class of cases in which accidents are attended by circumstances from which the inference of negligence is legitimate. *But in such cases negligence is not a presumption of law. It is a finding of fact, and before the fact can be found a jury must consider the circumstances, reason on them and draw the inference of negligence.'* " *Mack v. Reading Co.,* 377 Pa. 135, 139-140, 103 A. 2d 749 (1954). (Emphasis added)

While this doctrine may be applied to fact situations to which res ipsa loquitur might apply, the opposite is not true.[5] It is no surprise, therefore, that while our courts have been reluctant to apply the doctrine of res ipsa loquitur, they have repeatedly utilized the exclusive control doctrine where the facts are warranted. *Githens, Rexsamer & Co., Inc. v. Wildstein,* 428 Pa. 201, 236 A. 2d 792 (1968) ; *Borsa v. Great A. & P. Tea Co.,* 207 Pa. Superior Ct. 63, 215 A. 2d 289 (1965) ;

[5] A defendant in the position of a common carrier or public utility by owing the highest degree of care perforce owes the lesser duty of exercising reasonable care required by the exclusive control doctrine. Whereas, element (d) of the doctrine makes it apparent that liability will only be predicated upon a showing that the particular injury could have or should have been reasonably "foreseen and prevented by the exercise of due care."

*Kaplan Trucking Co. v. Coshocton Cartage, Inc.,* 207 Pa. Superior Ct. 43, 215 A. 2d 320 (1965).[6]

### III. The Case Against Korvette and Otis

The question now becomes whether either or both of the defendants could be found liable under the doctrine of res ipsa loquitur or the exclusive control doctrine.

Both doctrines require that the instrumentality be under the exclusive control of the defendant. Clearly, the law permits a finding of joint exclusive control in the case of two or more defendants. *Bollin v. Elevator Construction and Repair Co., Inc.,* 361 Pa. 7, 63 A. 2d 19 (1949); Prosser, Torts, 2d Ed. 1955, Section 85, pp. 514-515. In the instant case, Korvette, as owner and operator of the escalator in its store, certainly exercised exclusive control in the day-to-day operations of the instrumentality. Otis, by contracting to service and maintain the escalator on a weekly basis, likewise exercised exclusive control, at least in its capacity as the sole service company.

Escalators are widely used in public buildings, especially department stores, and thousands of people, including children use them daily without injury. It is not unreasonable for one to assume that it is safe to use them in the manner and for the purpose for which they were intended. For such an instrumentality

---

[6] The Court in *Izzi,* however, was quick to point out that "we deem it wise to reiterate that the doctrine of exclusive control, which has often been termed a dangerous doctrine, is in the last analysis applied only under very unusual conditions and only because of necessity." at 412 Pa. 566. Though the exclusive control doctrine embraces a wider group of defendants and circumstances than the doctrine of res ipsa loquitur, the warning of our Supreme Court wisely points out that even this principle should be cautiously applied.

to malfunction in such a way as to permit a small child to somehow get his foot lodged between the combs, and thereby sustain injury being unable to extricate himself from the spot, clearly was an occurrence which ordinarily would not have happened absent some breach of care.

Korvette, as a common carrier, owed that degree of care that would permit application of the doctrine of res ipsa loquitur. It does not follow, however, that Otis should owe the plaintiffs the highest practical degree of care, merely because it sold an escalator to a party who used it in the capacity of a common carrier. It would be as if to say that a manufacturer would owe a duty of a common carrier to passengers of Penn Central railroad cars because it sold and serviced those vehicles to the Railroad Co. While the language in *Loch v. Confair,* supra, was potentially broad in its application of the res ipsa loquitur doctrine, given the consequences of that doctrine, there is no reason to believe that that court intended to extend it beyond the facts of that particular case.

Appellee believes, however, that the decision in *Evans v. Otis Elevator Co.,* 403 Pa. 13, 18, 168 A. 2d 573 (1961), impliedly approves of an extension of the doctrine to the service company. Cited for that view is the following: "It is not the contract per se which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract. If a person undertakes by contract to make periodic examinations and inspections of equipment, such as elevators, he should reasonably foresee that a normal and natural result of his failure to properly perform such undertaking might result in injury not only to the owner of the equipment but also third persons, including the owner's employees . . .". We have no argument in reading this language as imposing a duty

upon the company to make reasonable inspections and careful repairs, but we do not believe that should impose a standard of care equivalent to a common carrier upon the service company.

The language immediately following the above-quoted portion reinforces the notion that what was intended by the Court in *Evans* was not the applicability of res ipsa loquitur, at all. The Court stated at p. 19: "The orbit of Otis' duty to third persons is measured by the nature and scope of his contractual undertaking with Sperling [the owner and operator] and, if, as presently appears, Otis undertook to inspect the elevator at regular intervals, and, if the elevator was in a defective or dangerous condition *discoverable by reasonable inspection,* Otis would be liable to third persons, regardless of any privity of contract, who might be injured by Otis' failure to properly perform its contractual undertaking of inspection." (Emphasis added).

The clear meaning of this statement is that absent a condition discoverable *by reasonable inspection,* liability would not attach to Otis under any theory. This language is inconsistent with the almost strict liability imposed upon a common carrier or one owing a similar obligation under the doctrine of res ipsa loquitur. It is, however, consistent with the elements required by the exclusive control doctrine, which specifically imposes liability only when "the likelihood of harm . . . could reasonably have been foreseen and prevented". While we do not believe that the doctrine of res ipsa loquitur should have been applied against Otis, the record substantiates a finding of liability under the exclusive control doctrine.[7]

---

[7] Restatement of Torts, 2d, §328 D, indicates that under the theory of res ipsa loquitur, as applied by the majority of jurisdictions, an *inference* of negligence may be found as against defendants having joint exclusive control. Illustration, No. 6, at p. 161,

As the instant case was tried solely on the basis of res ipsa loquitur, and as the trial judge charged only as to that doctrine, and since no mention was made as to the applicability of the exclusive control doctrine, we believe it was error to hold Otis liable to the plaintiffs.

In light of the overwhelming volume of cases in this Commonwealth, and notwithstanding the broad dicta of *Loch v. Confair,* there seems to be no logical or precedential reason in extending res ipsa loquitur beyond the cautiously limited situations in which it has theretofore been applied.

Judgment in favor of plaintiffs against Korvette is hereby affirmed. As to Otis, the case is remanded to the court below for a new trial.

---

CONCURRING AND DISSENTING OPINION BY PACKEL, J.:

The crushing of a three year old boy's toe by an escalator in a department store presents the question of whether both the store and an independent maintenance contractor can be held liable under the doctrine of *res ipsa loquitur.* The plaintiffs sued the store and the contractor which had installed the escalator less than one year prior to the accident and which thereafter inspected, serviced, and maintained it weekly. The case was submitted to the jury under the theory of *res*

describes a fact situation remarkably similar to the instant case. As we have already said, our exclusive control doctrine is the counterpart of the generally accepted doctrine of res ipsa loquitur, to which an inference of negligence attaches. Our doctrine of res ipsa loquitur, however, as indicated above, is dissimilar and should not be confused with its cognate elsewhere. Pennsylvania invokes res ipsa loquitur only as to those defendants owing the *highest degree of care,* e.g., common carriers. It is only upon that small and limited group of defendants that the court may impose the serious burden of a *presumption of negligence* attendant to the doctrine of res ipsa loquitur.

*ipsa loquitur* as applied to both defendants, and the jury found for the plaintiffs, against both defendants.[1]

As early as 1848, the Pennsylvania Supreme Court in *Laing v. Colder*, 8 Pa. 479, 482-483 (1848) held that common carriers owe the highest degree of care to their passengers: "The slightest neglect against which human prudence and foresight may guard, and by which hurt or loss is occasioned, will render them liable to answer in damages. Nay, the mere happening of an injurious accident, raises, *prima facie*, a presumption of neglect, and throws upon the carrier the *onus* of showing it did not exist." It is well settled by now that the operator of an escalator is a common carrier. *Petrie v. Kaufmann & Baer Co.*, 291 Pa. 211, 213, 139 A. 878, 879 (1927).

The jury could reasonably have found that the store had sufficient control over the escalator so as to be a common carrier, in that its employees started and stopped the escalator daily and cleaned the exterior parts. Nor was it even necessary for the jury to make that determination since a store which offers an escalator service for the benefit of its customers cannot relieve itself of the high degree of care owed them by delegating responsibility for maintenance and inspection to an independent contractor. Restatement 2d of Torts, §425. Although the Pennsylvania courts have not yet adopted this section of the Restatement, a recent Supreme Court case applied closely analogous §427, relating to work involving a special danger. *Philadelphia Electric Co. v. Julian*, 425 Pa. 217, 228 A. 2d 669 (1967). Other jurisdictions have developed rules regarding the non-delegability of a duty requiring the highest degree of care to be exercised by a common car-

---

[1] The issue of liability on the basis of products liability pursuant to the Restatement 2d of Torts, §402A was not raised and hence is not considered.

rier. *See Domany v. Otis Elevator Co.,* 369 F. 2d 604 (6th Cir. 1966), *cert. denied,* 387 U.S. 942 (1967).

The more difficult question is whether an escalator company can be held directly liable to a plaintiff under the doctrine of *res ipsa loquitur* even though that company is not a common carrier. In *Evans v. Otis Elevator Co.,* 403 Pa. 13, 18, 168 A. 2d 573, 575-576 (1961), the Court held the elevator company liable to a person injured in an elevator which was owned and operated by a separate company, not a party to the litigation, on the basis of a contract between the two companies: "It is not the contract per se which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract. If a person undertakes by contract to make periodic examinations and inspections of equipment, such as elevators, he should reasonably foresee that a normal and natural result of his failure to properly perform such undertaking might result in injury not only to the owner of the equipment but also third persons, including the owner's employees." The case was submitted to the jury as a regular negligence case, without any mention of *res ipsa loquitur,* perhaps because the elevator in *Evans* was a freight elevator.

There appear to be no Pennsylvania cases prescribing what standard of care is required of a company assuming the responsibilities of a common carrier, but it has been held that the standard of care varies according to the nature of the undertaking, *MacDougall v. Penna. Power & Light Co.,* 311 Pa. 387, 396, 166 A. 589, 592 (1933): "Vigilance must always be commensurate with danger. A high degree of danger always calls for a high degree of care. The care to be exercised in a particular case must always be proportionate to the seriousness of the consequences which are reasonably to be anticipated as a result of the conduct in

question." In accord are two cases imposing special duties of care on manufacturers of potentially dangerous products. *Maize v. Atlantic Ref. Co.*, 352 Pa. 51, 41 A. 2d 850 (1945) (warning on can of toxic cleaner not conspicuous enough); *Foley v. The Pittsburgh-Des Moines Co.*, 363 Pa. 1, 68 A. 2d 517 (1949) (explosion of liquified natural gas tank manufactured by defendant).

The Pennsylvania courts have established a special standard to apply to common carriers in order to protect the public being served by them. A plaintiff is allowed to rest his case on *res ipsa loquitur* because "when the passenger commits himself to the carrier he does so in ignorance of the machinery and the appliances, as well as their defects, used in connection with the means of transportation, and becomes a passive and helpless creature in the hands of the transportation company and its agents." *Fox v. Philadelphia*, 208 Pa. 127, 134, 57 A. 356, 358 (1904). The same reasoning calls for the application of that standard to companies which assume the responsibilities of a common carrier. The contractor was aware that the escalator it installed and maintained was to be used by the customers of the store. It, alone, was in control of the machinery which operated the escalator. It had a duty to inspect and to maintain it for the protection of all users. To remove the boy's foot from the escalator, the steps had to be wedged apart and the comb plate removed. The plaintiffs would have no way of proving what the defendants had done, or failed to do, which caused the accident to happen. This is a classic case for *res ipsa loquitur*.

Three other jurisdictions have upheld submitting the case against both the store and the escalator company to the jury under the doctrine of *res ipsa loquitur* in factual situations very similar to the case here. *Do-*

*many v. Otis Elevator Co.,* 369 F. 2d 604 (6th Cir. 1966) (applying Ohio law); *Vandagriff v. J. C. Penney Co.,* 228 Cal. App. 2d 579, 39 Cal. Rptr. 671 (1964); *Enslein v. Hudson & Manhattan R.R. Co.,* 8 Misc. 2d 87, 165 N.Y.S. 2d 630 (1957), aff'd as to liability and rev'd as to damages, 6 App. Div. 2d 833, 176 N.Y.S. 2d 70 (1958), aff'd 6 N.Y. 2d 723, 185 N.Y.S. 2d 810 (1959). Each of the above cases involve state doctrines regarding common carriers, similar to that in Pennsylvania. Other cases involving an escalator, or elevators, have held it wrong to submit the case against the elevator company to the jury under *res ipsa loquitur* because of the higher control exercised by the store or owner: *Weston v. Gold & Co.,* 167 Neb. 692, 94 N.W. 2d 380 (1959) (escalator); *Otis Elevator Co. v. Yager,* 268 F. 2d 137 (8th Cir. 1959); *McDonald v. Haughton Elevator & Machine Co.,* 60 Ohia App. 185, 14 Ohio Ops. 17, 20 N.E. 2d 253 (1938). In *Domany, supra,* the court distinguished *McDonald, supra,* because the relationship between the store and the elevator company differed as to the amount of control each exercised over the machinery.

Our Supreme Court has held that two defendants acting separately can both have exclusive control and, therefore, that it is permissible to submit the case against two defendants under the doctrine either of exclusive control or of *res ipsa loquitur, Loch v. Confair,* 372 Pa. 212, 93 A. 2d 451 (1953) (plaintiff injured by an exploding bottle sued both the bottler and the grocery store).

Whether the store has a right over against the elevator company, is not properly before this Court. The store may pursue such a claim, but that does not preclude the plaintiff's obtaining a judgment against the store in this action.

Both appellants have also appealed the refusal of the judge to grant judgment n.o.v. on the theory that

no reasonable jury could find that either appellant could have avoided the accident by exercising more care. I cannot agree. In a *res ipsa loquitur* case the only burden on the plaintiff is to show that the accident occurred and was caused by a machine within the category of common carriers, *Petrie v. Kaufmann & Baer Co.*, 291 Pa. 211, 213-214, 139 A. 878 879 (1927): "While a carrier is not an insurer of the safety of the passengers, he is bound to exercise the highest practical degree of care for their safety, and where a passenger is injured through some defect in the means of transportation or the manner of operation, the burden is upon the carrier to show it could not have been prevented by human foresight." The only evidence offered by either appellant to show that the accident could not have been prevented was the testimony of an expert witness who first examined the escalator almost two years after the accident. Even that testimony did little to clarify what actually happened and less to prove the inevitability of such accidents. It is common knowledge that small children frequently ride escalators with adults who are shopping. The testimony for the plaintiff indicated that the boy was standing still next to his grandfather on the escalator. It is hard to believe that it is impossible to prevent a three year old child's foot from becoming stuck between escalator steps or between the step and the comb, and the appellants did not convince the judge or the jury otherwise.

The final question raised by the appellant is as to the amount of the verdict. The verdict of $3,500 to the parents and $27,500 for the boy, as remitted, were not excessive.

I concur in the affirmation of the judgment in favor of the department store but dissent from the reversal of the judgment against the independent maintenance contractor.