Banet et al., Appellants, *v.* City of Philadelphia.

Argued September 13, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent).

*Edward Greer,* with him *S. Robert Levant, Mesirov, Gelman, Jaffe & Levin,* and *Richter, Syken, Ross & Levant,* for appellants.

*James M. Penny, Jr.,* Assistant City Solicitor, with him *Alfeo P. Libetti,* Assistant City Solicitor, *John Mattioni,* Deputy City Solicitor, and *Martin Weinberg,* City Solicitor, for appellees.

OPINION PER CURIAM, November 21, 1973:

The six judges who heard this appeal being equally divided, the judgments are affirmed.

---

OPINION BY HOFFMAN, J., IN SUPPORT OF REVERSAL:

Appellants contend that the trial court erred in refusing to charge the jury on the doctrine of exclusive control.

On April 14, 1965, a 48″ water main broke at the intersection of Frankford and Torresdale Avenues in Northeast Philadelphia. The water pipe was manufactured of cast iron and laid in the ground about 1908. Appellants, who maintained business establishments in the general area, suffered extensive water damage from the resultant flood which reached a height of 8 feet. For two months prior to the break, the City had been conducting valve replacements in the main chambers. To gain access to the valves, the street surface and chamber roof were removed by the use of pneumatic tools, cranes and other heavy equipment.

Appellants produced testimony at trial establishing the fact that the damage was caused by the flooding from the broken water main. They offered proof that during the 60 years since the pipe had been installed, no inspections had been conducted in the area for corrosion or metal failure. An employee of the City confirmed that excavation and repairs were conducted at the intersection where the main broke. A consulting chemist and chemical engineer testified that a cast iron pipe manufactured some 60 years ago would necessarily have corroded to a great extent. He stated that inexpensive and simple testing procedures could measure the extent of corrosion. He further said that road traffic and the heavy repair work in the area could cause a fracture of the pipe in its corroded state.

The City denied the possibility of corrosion, and took the position that the break could not have occurred

as a result of any of the hypothesized theories offered by the appellants. The pipe was not available at the time of trial, and appellee had run no tests to determine the cause of the break. The City reported that shortly after the accident, and before appellants could examine it, the broken pipe had been discarded in the water department's scrap yard. In short, the City could offer no explanation of the cause of the break, except that it was due to no fault on its part and was merely an unforeseen accident.

At the close of testimony, appellants submitted points for charge, asking the Court to instruct the jury that an inference of negligence could be made from the circumstances of the accident under the exclusive control doctrine. The trial court refused to do so, saying in its charge: "The plaintiffs here had an almost impossible burden and perhaps an unfair burden in attempting to establish just what occurred. There is one other theory of law which I refused to apply which may be of some significance. I don't know that it is, but it is the doctrine of exclusive control." The trial judge concluded that a water main case was not the kind of case to which the doctrine applied, as the issues involved the question of "latent and hidden defect", not necessarily caused by any negligent act of the defendant, and governed by strict requirements of proof of negligence.

It has been said that the doctrine of exclusive control is "widely misunderstood". *Izzi v. Philadelphia Transportation Co.,* 412 Pa. 559, 564, 195 A. 2d 784 (1963). Examination of the case law in this jurisdiction demonstrates that that evaluation is somewhat of an understatement. Pennsylvania, unlike other jurisdictions, recognizes the existence of two separate doctrines—res ipsa loquitur and exclusive control.

The former, bearing the namesake of doctrines existing in other states, has been applied only in limited

circumstances, primarily involving common carriers or utility companies. As we said in *Gilbert v. Korvette's, Inc., et al.,* 223 Pa. Superior Ct. 359, 299 A. 2d 356 (1972), "three factors must coexist in order to invoke the doctrine of res ipsa loquitur: (a) the defendant must owe to the plaintiff a duty of the highest degree of care; (b) the instrumentality which caused the accident was in the exclusive control of the defendant; *and,* (c) that which happened was something that ordinarily would not have occurred if the defendant had exercised the high degree of care which the law imposes upon him." *Gilbert,* at 362-363. The invocation of this doctrine creates a presumption of negligence, which if not rebutted, entitles the plaintiff to a verdict.

The doctrine of exclusive control, which "raises *an inference* of negligence and shifts to the defendant the burden of going forward with the evidence, and thus takes all such cases to the jury", has been said to apply only when all of the following elements are found to exist: "(a) where the thing which caused the accident is under the exclusive control of or was made or manufactured by the defendant; *and* (b) the accident or injury would ordinarily not happen if the defendant exercised due care, or made or manufactured the article with due care; *and* (c) where the evidence of the cause of the injury or accident is not equally available to both parties, but is exclusively accessible to and within the possession of the defendant; *and* (d) the accident itself is very unusual or exceptional and the likelihood of harm to plaintiff or one of his class could reasonably have been foreseen and prevented by the exercise of due care; *and* (e) the general principles of negligence have not heretofore been applied to such facts." *Izzi,* supra at 566.

The requirements set out in the *Izzi* case generally reflect the law of res ipsa loquitur as it is applied by other jurisdictions, except with regard to the last re-

quirement. That last requirement, denying the utilization of this doctrine to any plaintiff who presents a factual situation to which negligence principles had "heretofore been applied", predicates the application of exclusive control entirely on the basis of historical accident. Had a plaintiff once established precedent by the utilization of common law negligence principles in a particular type of case, a plaintiff today meeting the first four requirements of *Izzi* could not invoke this well-accepted and equitable doctrine.

I have searched the case law in this and other jurisdictions and have failed to find one single source imposing this historical bar. As late as 1962, one year prior to *Izzi*, our Supreme Court, per Chief Justice Horace STERN, accepted the requirements set forth in *Mack v. Reading Company*, 377 Pa. 135, 138-139, 103 A. 2d 749 (1954) : ". . . [A]s early as almost a century ago, Chief Justice ERLE, in the Court of Exchequer, in *Scott v. The London and St. Katherine Docks Company*, 3 Huristone & Coleman 596, enunciated the rule of 'exclusive control' in the exact language which we have since quoted and followed in a multitude of cases in our own reports, namely, that '. . . where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care.' We have applied this doctrine only in cases where the evidence as to the cause of the accident was peculiarly or exclusively within the possession of the defendant and not equally available to both parties." *Davies v. McDowell National Bank*, 407 Pa. 209, 180 A. 2d 21 (1962).

The doctrine as enunciated in the British case, supra, was fully embraced by Wigmore.[1] The jurisdictions that have accepted res ipsa loquitur (our version of the exclusive control doctrine) have embodied these ancient, well-reasoned requirements into their case law. See, Prosser, *Law of Torts*, §39 (Third Edition, 1964); cf. also, Restatement of Torts, 2d, §328D.

In the final analysis, there appears to be no precedent in the case law, statutes or commentaries, from which the fifth requirement of *Izzi*, supra, derives. While I am in agreement with the Majority's position in *Izzi* that the doctrine should be "applied only under very unusual conditions and only because of necessity" (412 Pa. at 566), we see no reason why this justifies the last requirement in the *Izzi* case. I must agree with the late Justice MUSMANNO, who in his dissent to *Miller v. Delaware County Memorial Hospital*, 428 Pa. 504, 509, 239 A. 2d 340 (1968), said that the Majority's position[2] "has elevated to an almost unreachable height the doctrine of exclusive control. It comes close to nullifying entirely that excellent principle of law."

Concluding that requirement (e) of *Izzi* is an unprecedented aberration of the law, and, therefore, should not be given weight by this Court, it must now be determined whether the doctrine of exclusive control is applicable to this case.

Appellants sought damages for flooding to their business establishments as a result of a sudden break in a water main. While several theories were offered as to the possible cause of the break, appellants could produce no direct evidence of causation. Instead, they merely established that the main was laid some 60 years ago; that no inspections had even been made on the

---

[1] 4 Wigmore, *Evidence*, 1st Ed. 1905, §2509.

[2] In *Miller*, Justice BELL delivered the Opinion of the Court, to which Justices JONES, COHEN, EAGEN and ROBERTS concurred in the result.

main; that the City was responsible for the repair and maintenance of the water mains in the City; that repairs were being conducted on valves at the intersection where the break occurred; and, that the fractured main could not be examined by the appellants as the City confiscated and destroyed the main immediately following the break. In short, appellants could only say that there was a break and they did not know why or how it occurred.

This, I believe, is the very situation to which the doctrine of exclusive control should be applied. If we analyze this factual situation in light of *Mack v. Reading Co.,* supra, and its progeny, it is apparent that the water mains involved in this litigation were in the exclusive control of the City of Philadelphia. Furthermore, water mains do not break as a matter of course. Such an accident does not happen "in the ordinary course of things" and "if those who have the management [of the water main] use proper care." Finally, as the appellants are not in the business of overseeing water mains, and as the City is entrusted with the duty of caring for and maintaining the water system of the municipality, and as the appellants were precluded from determining the cause of the break due to the destruction and unavailability of the water main, this case is one in which the evidence of the cause of the injury or accident "was peculiarly or exclusively within the possession of the defendant and not equally available to both parties." *Mack,* supra at 139.

I am cognizant of the prior case law in this jurisdiction which required the plaintiff to prove actual or constructive notice of the defect in the water main before recovery could be obtained. There are, however, no appellate decisions on this subject after 1925. *Philadelphia Ritz Carlton Co. v. Philadelphia,* 282 Pa. 301 (1925); *Zimmer v. Philadelphia,* 57 Pa. Superior Ct. 20 (1914). In light of recent developments in tort law,

in this Commonwealth and other jurisdictions, I believe that appellants should not, in the words of the lower court judge, be shackled with "an almost impossible burden" of proving negligence. This is not to say that a plaintiff must not convince the trier of fact that the defendant is negligent. On the contrary, the plaintiff is only relieved, *in a limited number* of factual situations, from identifying the negligent act. The inference of negligence from the occurrence may or may not be acceptable to a jury in imposing liability.

The Restatement of Torts, 2d, §328D, specifically recognizes the water main cases as illustrative of situations to which res ipsa loquitur (the equivalent to our doctrine of exclusive control) should apply. In comment c., the American Law Institute points out: "c. *Type of event.* The first requirement for the application of the rule stated in this Section is a basis of past experience which reasonably permits the conclusion that such events do not ordinarily occur unless someone has been negligent. There are many types of accidents which commonly occur without the fault of anyone. . . . On the other hand there are many events, such as . . . *the escape of gas or water from mains* or of electricity from wires or appliances, . . . where the conclusion is at least permissible that such things do not usually happen unless someone has been negligent. To such events res ipsa loquitur may apply." (Illustration 6 of the Comment paraphrases the instant appeal).

While some jurisdictions refuse to apply res ipsa loquitur to a water main case, predicating their decisions primarily on either the lack of notice to the municipality or the availability of discovery to determine the cause of the accident; *Fanning v. Montclair*, 196 A. 2d 18 (N.J. Superior Ct., 1963) ; *Ford v. District of Columbia*, 190 A. 2d 905 (D.C. Cir. 1963) ; *A. Da Prato Company v. City of Boston*, 134 N.E. 2d 438 (Mass., 1956). I am in agreement with the increasing number

of other jurisdictions that have adopted the Restatement view in applying res ipsa loquitur in such a case. See e.g., *Bierman v. Consolidated Edison Co. of New York and the City of New York,* 320 N.Y.S. 2d 331 (1970); *Quigley v. Village of Hibbing,* 129 N.W. 2d 765 (Minn., 1964); *C. C. Anderson Stores Co. v. Boise Water Corp.,* 372 P. 2d 752 (Idaho, 1962); *Adam Hat Stores, Inc. v. Kansas City,* 316 S.W. 2d 594 (Missouri, 1958); *Kind v. City of Seattle,* 312 P. 2d 811 (Wash., 1957); *Fine v. Mayer & Council of Wilmington,* 94 A. 2d 393 (Del., 1953); *Foltis v. City of New York,* 38 N.E. 2d 455 (N.Y., 1941); *Smith v. Southern Counties Gas Co.,* 264 P. 532 (Calif., 1928).

Illustratively, the case of *Adams Hat Stores v. Kansas City,* supra, involves almost an identical factual situation as the instant case. There, a cast iron water main installed by the City of Kansas City nearly 60 years prior to the date of accident, burst flooding a nearby men's clothing business. Neither the city nor the plaintiff knew the cause of the break, although an expert witness did offer a number of theoretical possible causes. The Court, after recognizing the general rule that the City in operating a waterworks system is acting not in its governmental capacity but as any private supplier of water, stated:

"The city selected the pipe, laid it and exclusively managed and controlled it. Under these circumstances, we are constrained to agree with the Foltis case, 21 N.Y.S. 2d 800, 803, . . . 'Cast-iron water mains which are properly laid four feet underground ordinarily do not break, any more than ordinarily trains are derailed, missiles fly, or elevators or walls fall; and when such a main does break the inference of negligence follows in logical sequence. . . .' " (316 S.W. 2d at 598).

. . .

"It [the Foltis case] unequivocally holds that 'proof that property was damaged by a break in a water main

constructed and controlled by the city was sufficient' under the res ipsa loquitur rule to make a submissible case.

. . .

"Neither can we agree with the contention of the city that, due to the lapse of time since installation and the difficulty of ascertaining the cause of the breaking of the pipe, the res ipsa doctrine is not applicable for the reason that one of the essential elements of the rule is that the defendant possesses superior knowledge or means of information as to the cause of the occurrence. . . . Surely, any supplier of water has or, in the exercise of ordinary care, should have superior knowledge or means of information as to the cause of a break in an underground water main installed and maintained by it in a street, over which it has exclusive control, than would an adjacent property owner, who could have none. . . .

"And, finally, on the score of submissibility of the cause, we hold that the possibility of the main breaking from some cause for which the city would not be liable does not preclude the right of plaintiff to submit to the jury the issue of the break being caused by negligence of the city. When it is once determined under the res ipsa doctrine that the breaking of the main raised a reasonable inference of negligence, as we have determined under the facts of the instant case, it is not necessary that the plaintiff go further and exclude every other reasonable theory of nonliability on the part of the defendant. 'If a plaintiff in [a res ipsa case] were required to produce evidence that would exclude every reasonable theory but that of negligence of the defendant the doctrine would be annihilated.' (Citations omitted)." 316 S.W. 2d 599-600.

I believe that the instant case presents even more compelling reasons for the invocation of the doctrine of exclusive control. Unlike the situation in *Adams Hat*

*Stores,* supra, the break occurred not while the main was buried underground, but while it was exposed for purposes of repair of valves taking place at the same point in time and location. The main could have been inspected during the two-month period work had been going on at the site. There was even testimony that the water could have been shut off at the point where work was being done. Furthermore, appellants were precluded from determining the cause of the break as the City destroyed the fractured pipe soon after the accident. This was done without any tests on the part of the City to ascertain the cause.[3] Without the opportunity of examining the pipe, appellants were entirely prevented from discovering the existence of defects, corrosion,[4]

---

[3] While the appellants did not request such an instruction, we parenthetically note that the destruction of the fractured main by the City, thereby making it unavailable to the appellants for inspection, would entitle the appellants *upon request* to an adverse charge. As we said in *Hertz Corp. v. Hardy,* 197 Pa. Superior Ct. 466, 473, 178 A. 2d 833 (1962) : "The failure to call witnesses (not equally accessible to both parties) or produce evidence without sufficient explanation of the reason for not doing so may give rise to an inference *by the jury under proper charge* that such witnesses would have testified unfavorably or that the evidence would have been adverse to the interests of that person. . . ." (Emphasis in original.)

[4] The probability of corrosion in a cast-iron pipe laid some 60 years prior to the date of accident was commented on with respect to an underground oil tank by Justice MANDERINO, in *Lerro v. Thomas Wynne, Inc.,* 451 Pa. 37, 40, 301 A. 2d 705 (1973) : "The appellant is charged with the ordinary knowledge of a reasonable man and any specialized knowledge which the appellant had or should have had in the conduct of its activities. The appellant maintained a 10,000 gallon metal tank which contained oil and was buried in the ground. Ordinary men know that metal objects placed in the ground involve a risk of corrosion in spite of any protective measures which may have been taken prior to burial of the object in the ground. The knowledge of the danger of corrosion from underground moisture upon metal surfaces is not an uncommon knowledge."

or other signs indicating the cause of the break. Under these peculiar circumstances, I believe that the appellants were entitled to a charge on the doctrine of exclusive control.

I would therefore, reverse the judgment of the court below, and remand the case for a new trial consistent with this opinion.

CERCONE and SPAETH, JJ., join in this opinion in support of reversal.