ALPHEUS TODMAN and VIRGINIA TODMAN, Plaintiffs

v.

GOVERNMENT OF THE VIRGIN ISLANDS, Defendant

Civil No. 569/1975

Territorial Court of the Virgin Islands
Div. of St. Thomas and St. John

April 27, 1978

---

[21] Cf. Jackson v. Goad, 73 N.M. 19, 385 P.2d 279, 281–82 (1963).

NORTON S. LEVINE, ESQ., St. Thomas, V.I., *for plaintiff*

BRENDA HOLLAR, ESQ., Assistant Attorney General, St. Thomas, V.I., *for the government*

PETERSEN, *Judge*

### MEMORANDUM OPINION

This is an action for damages brought by the plaintiffs Alpheus Todman and Virginia Todman against the Government of the Virgin Islands. The facts are basically not in dispute. On June 17, 1975, the plaintiffs were living at No. 70 Estate Thomas in a downstairs apartment situated below street level. At approximately 4:30 p.m. on that date the plaintiff, Virginia Todman, observed what appeared to be a "water geyser" in the front portion of her apartment. She also observed water seeping into her apartment. It is likewise not disputed that the cause of the flooding was a broken water main in the street which ran in front of the plaintiffs' apartment.

The defendant Government of the Virgin Islands admitted in its pleadings that it selected, laid and exclusively managed and controlled the pipelines.

Employees of the Department of Public Works and other government officials, including the Governor, converged upon the scene to view the "spectacle" and to offer assistance. Despite the assistance given by the Government of the Virgin Islands at the scene, the plaintiffs' possessions were extensively water damaged and many were rendered valueless. The plaintiff also testified as to the further inconvenience and expense incurred while staying at the

Windward Passage Hotel and the Mitchell Motel with her infant.

The uncontroverted testimony of the defendant's witness established that the pipe was laid five (5) feet underground in either 1970 or 1971; that the water which flooded the plaintiffs' apartment had escaped via an eight inch crack in the main pipe. It was further established that the cast iron pipe was designed to last at least twenty years.

Mr. Ivan George, Supervisor at the Department of Public Works, the defendant's expert witness, testified that the crack could have been caused by a "water hammer"— a condition of trapped air which causes increased pressure on the pipe causing it to break. He concluded that this condition could have been avoided if there were bleeder valves in the pipelines. He admitted that there were no bleeder valves on these pipes. He indicated further that water pipes burst in this area frequently and that the Government is constantly involved in repairs. He also opined that the crack in the pipe could also have been caused by a rock beneath the pipe. However, he was uncertain as to the exact cause of this crack.

The plaintiff contends that the doctrine of res ipsa loquitur is applicable to this case as the pipelines were under the exclusive control of the defendant and such cracks do not ordinarily occur without the presence of negligence.

The defendant contends that the doctrine should not be applied to water pipeline cases and further asserts that the plaintiffs' proof failed to establish that the event is of a kind which ordinarily does not occur in the absence of negligence.

By virtue of the provisions of Title 1 V.I.C. § 4, the restatement of the law approved by the American Law Institute shall be the rules of decision in the courts of the

Virgin Islands in cases to which they apply, in the absence of local law to the contrary. This is further enunciated in Baumann v. Canton, 7 V.I. 60 (D.C.V.I. 1968), where the court stated that "[i]n the absence of local law to the contrary the rules expressed in the Restatement of Torts controls."

The Restatement (Second) of Torts § 328B (1965) governs the analysis of the res ipsa loquitur issue. Second 328B states:

It may be inferred that harm suffered by the plaintiff is caused by the negligence of the defendant when (a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

The Restatement (Second) of Torts § 328D especially recognizes that water main cases are illustrative of situations and circumstances to which the doctrine of res ipsa loquitur should apply. The American Law Institute enunciates further in Comment c that:

Type of event. The first requirement of the application of the rule stated in this Section is a basis of past experience which reasonably permits the conclusion that such events do not ordinarily occur unless someone has been negligent. There are many types of accidents which commonly occur without the fault of anyone. On the other hand there are many events, such as the escape of gas or *water from mains* or electricity from wires of appliances where the conclusion is at least permissible that *such things do not usually happen unless someone has been negligent*. To such events *res ipsa loquitur* may apply. (Emphasis added.)

It is also important that the American Law Institute chose to illustrate its application of res ipsa loquitur with the following:

596

A's premises are damaged by water escaping from a main under the street, the main was originally installed by B Company, which has at all times had exclusive control of its inspection and maintenance. There is expert evidence that water mains made of proper materials and installed properly, inspected and maintained, do not ordinarily break. Without other evidence, it may be inferred that the escape of the water was due to the negligence of B Company.

Restatement (Second) of Torts § 328D, Comment g Illustration 6.[1]

An increasing number of jurisdictions have adopted the Restatement view in applying res ipsa loquitur to pipeline cases. See e.g., C . C. Anderson Stores Co. v. Boise Water Corp., 372 P.2d 752 (1962) ; Brerman v. Consolidated Edison Co. of New York, 320 N.Y.S.2d 33 (1970) ; Kind v. Seattle, 312 P.2d 811; Fine v. Mayor & Council of Wilmington, 94 A.2d 393, 20 A.L.R.3d 1201.

In the case of Adam Hat Stores v. Kansas City, 316 S.W.2d 594 (1958) a cast-iron water main installed by the City of Kansas nearly 60 years prior to the date of accident burst flooding a nearby men's clothing business. Neither the city nor the plaintiff knew the cause of the break, although an expert witness did offer a number of theoretical possible causes. The court therein stated:

> The city selected the pipe, laid it and exclusively managed and controlled it. Under these circumstances we are constrained to agree with the Foltis case, 21 N.Y.S.2d 800, 803, . . .

---

[1] This illustration is taken from Adam Hat Stores, Inc. v. Kansas, 316 S.W.2d 594 (1958), as further enunciated in the Restatement (Second) of Torts, Reporters' Notes § 328D, Illustration 6 at 61.

The court in Adam Hat Stores, supra, cited the early English case of Scott v. The London & St. Katherine Docks Company (1865), 3 H. & C. Reports, 596, 601, 13 W.R. 410, 11 Jur. (N.S.), 204; 159 Eng. Rep. 665 wherein Chief Justice Erle announced the principle which later became known as the res ipsa loquitur doctrine:

> "There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence in the absence of explanation by the defendants that the accident arose from want of care."

Cast-iron water mains which are properly laid four feet underground ordinarily do not break, any more than ordinarily trains are not derailed, missiles fly, or elevators or walls fall; and when such a main does break the inference of negligence follows in logical sequence.

"It" [the Foltis case] unequivocally holds that proof that property was damaged by a break in a water main constructed and controlled by the city was sufficient under the res ipsa loquitur rule to make a submissible case.

■ As in the case at bar, neither the city nor the plaintiff in Adam Hat Stores, supra, knew the actual cause of the break. Yet the plaintiffs did not have the burden of establishing the actual cause of the break in order to establish a prima facie case under the res ipsa loquitur doctrine. If the plaintiffs herein were required to produce evidence that would exclude every other reasonable theory of non-liability on the part of the defendant, the doctrine would be rendered useless.

The defendant has relied heavily on Banet v. City of Philadelphia, 313 A.2d 253 (1973), and further contends that the facts of that case are sufficiently similar to justify this court's adoption of its rationale. However, a close examination of Banet, supra, indicates that it is readily distinguishable. In this case the crack occurred while the pipes were buried underground, while in Banet, supra, the pipes were exposed for purposes of valve repairs. A reasonable inference may be drawn that other responsible causes, including the conduct of third parties could not be sufficiently eliminated by the evidence. Moreover, in Pennsylvania, the res ipsa loquitur doctrine has been limited primarily to cases involving common carriers or utility companies. Banet v. City of Philadelphia, supra at p. 255.

Admittedly, the water pipes, if properly laid and sound when laid, ordinarily would last without breaking for a minimum of twenty years in the absence of an unusual occurrence. It is reasonable to infer, therefore, that when

the cast-iron pipe cracked after about five years of service, approximately one-fourth of its minimum expected duration, the pipe either was defective when laid, was carelessly laid or maintained or was subjected to such external or internal pressure as to cause it to crack, or that it cracked as a result of a combination of causes.

The evidence produced by the defendant did not reveal the cause of the crack (concededly it was not its burden) but instead offered several possible theories. Noteworthy is a statement in the Adam Hat Store case, supra:

That the city advanced one or more theories by which the break could have been caused, but explicitly denied having any reasoned opinion that any one of its theories did cause it.

Of particular significance is the testimony of the defendant's own expert witness, Mr. Ivan George, Supervisor at Public Works Department. He indicated that the defendant neglected to place pressure valves in the pipes, and that the defendant failed to inspect the water pipelines in that area even though they were laid prior to the installation of the pump house and other pipes in that area which fed into them. Obviously, his testimony failed to rebut the inference of negligence.

In Pacific Northwest Telephone v. Port of Seattle, 491 P.2d 1037 (1972), a ten inch cast-iron pipe with a minimum duration of 100 years burst after 25 years, causing damages to plaintiff's property. The court stated:

Legal control or responsibility for the proper and efficient functioning of the instrumentality which caused the injury and a superior, if not exclusive, position for knowing or obtaining knowledge of the facts which caused the injury, provide a sufficient basis for application of the doctrine. . . . When these circumstances are shown, the plaintiff has made a prima facie case and it devolves upon the defendant to meet and offset the effect of the presumption.

Here, the water main was under the exclusive control of the defendant City and the court found as a fact that a break of this sort does not ordinarily occur without the presence of negligence. It further found that the defendant had failed to explain the occurrence and although it found that the defendant had exercised due care in many respects, the findings reveal that the defendant's evidence fell short of proving its freedom from negligence in regard to the break.

■ In light of the foregoing, the Court finds that the doctrine of res ipsa loquitur is applicable to this case and further finds that the defendant has failed to rebut the presumption that the defendant's negligence caused the injury.

While the Government contested vigorously the basic issue of liability under the doctrine of res ipsa loquitur, the Government did not challenge the plaintiffs' evaluation as to the damages suffered.

Accordingly, the plaintiffs are entitled to recover the sum of $5,511.70, costs and a reasonable attorney's fee.

### ORDER

Based on the foregoing Memorandum of Law, it is hereby

ORDERED that the plaintiffs recover from the defendant the sum of $5,511.70, costs and a reasonable attorney's fee.