Gilbert *v.* Korvette's Inc., Appellant.

Argued November 27, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*William G. Klenk, II,* with him *Sidkoff, Pincus, Greenberg, Wapner & Golden,* for appellant.

*William L. Meritz,* for Creston Gilbert, appellee.

*Peter P. Liebert, 3rd,* with him *Harry A. Short, Jr., Thomas J. Finarelli* and *Liebert, Short, Fitzpatrick & Lavin,* for Otis Elevator Co., appellee.

OPINION BY MR. JUSTICE ROBERTS, October 16, 1974:

Three-year-old Creston Gilbert, in the company of his grandfather and sister, was riding an Otis escalator in a Korvette's department store. At the bottom of the escalator, Creston attempted to alight, but his foot became caught in the step and was pulled into the comb plate. As a consequence, young Creston lost part of his left great toe and suffered general disfiguration and deformity of the foot.

Subsequently, an action for negligence was brought against Korvette's, Inc., which owned and operated the escalator, and Otis Elevator Co., which manufactured, installed, and by contract undertook, in its judgment,

to regularly and systematically examine, adjust, repair, replace, and otherwise service and maintain the escalator.[1] The case was submitted to the jury with an instruction on res ipsa loquitur, and verdicts against both defendants were returned. Each defendant appealed to the Superior Court. That court affirmed as to Korvette's but, believing the doctrine of res ipsa loquitur was erroneously applied against Otis, ordered a new trial for that defendant.[2] This Court granted Korvette's petition for allowance of appeal[3] limited, however, to a determination whether the case against Otis was properly submitted to the jury on res ipsa loquitur.[4] For reasons different than those advanced by the Superior Court, we affirm the award of a new trial to defendant Otis.[5]

## I.

The Latin expression "res ipsa loquitur" originated as a casual utterance during argument by Chief Baron Pollock in *Byrne v. Boadle,* 2 H. & C. 722, 159 Eng. Rep.

---

[1] For the presently relevant portions of the contract, see note 33 infra.

[2] *Gilbert v. Korvette's, Inc.,* 223 Pa. Superior Ct. 359, 299 A.2d 356 (1972). Judge PACKEL, being of the view that res ipsa loquitur was properly applied to both defendants, filed a concurring and dissenting opinion. Id. at 372, 299 A.2d at 363.

[3] Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp. 1974).

[4] Because the grant of allocatur was limited as indicated, the judgment entered in favor of plaintiff against defendant Korvette's is not at issue on this appeal.

[5] This Court may, of course, affirm if any ground for affirmance exists. See *Prynn Estate,* 455 Pa. 192, 197 n.9, 315 A.2d 265, 267 n.9 (1974); *Concord Township Appeal,* 439 Pa. 466, 469, 268 A.2d 765, 766 (1970); *Ridley Township v. Pronesti,* 431 Pa. 34, 37, 244 A.2d 719, 720-21 (1968); *Sherwood v. Elgart,* 383 Pa. 110, 117 A.2d 899 (1955).

299 (Ex. 1863). There, a barrel of flour fell from a window of defendant's warehouse, striking a passing pedestrian. Despite his inability to show how or why the barrel rolled out the window, the pedestrian-plaintiff was permitted to recover upon a showing that the defendant was in possession of the warehouse. In effect, the case held merely that both negligence and causation may be established by circumstantial evidence. If the defendant owed the plaintiff a duty of care, and if the circumstances indicated that the defendant breached that duty causing injuries, the plaintiff, according to Chief Baron Pollock, could recover. Res ipsa loquitur, therefore, in its origin involved nothing more than a commonsense appraisal of the probative force of circumstantial evidence.

Although res ipsa loquitur was conceived as a shorthand statement of the evidentiary rule allowing negligence to be established by circumstantial proof, confusion developed in this Commonwealth and elsewhere[6] concerning the availability and effect of this "doctrine."[7] As Dean Prosser observed, res ipsa loquitur early "became involved . . . in cases of injuries to passengers at the hands of carriers, with the aftermath of an older decision [*Christie v. Griggs*, 2 Camp. 79, 170 Eng. Rep. 1088 (N.P. 1809)] which had held that the carrier had the burden of proving that it had not been negligent. The two principles, one concerned with the sufficiency of circumstantial evidence, the other of the burden of proof, gradually became confused and intermingled; and from this fusion there developed an uncertain 'doctrine' of res ipsa loquitur, which has been the source of so much trouble to the courts that the

---

[6] See Restatement (Second) of Torts § 328D, comment a (1965).

[7] Whether res ipsa loquitur, a phrase which means no more than "the thing speaks for itself," may appropriately be called a "doctrine" is subject to some question. See W. Prosser, Handbook of the Law of Torts § 39, at 213 n.72 (4th ed. 1971).

use of the phrase itself has become a definite obstacle to any clear thought, and it might better be discarded entirely." W. Prosser, Handbook of the Law of Torts § 39, at 213 (4th ed. 1971) (footnotes omitted); see Restatement (Second) of Torts § 328D, comments a, b (1965); 9 J. Wigmore, Evidence § 2509, at 378 (3d ed. 1940).

Similarly, the *evidentiary* use of res ipsa loquitur became associated with a related but separate problem —the nature and extent of the *substantive* duty owed by the defendant to the plaintiff. The scope of a defendant's control of an activity or instrumentality is a factor which may relate both to the question of his duty and to the propriety of inferring negligence from particular circumstances. However, the dual importance of control in tort law confounded the evidentiary principle of res ipsa loquitur with the question of substantive duty. Further uncertainty was thereby created.

In Pennsylvania, this confusion among evidentiary, substantive, and procedural questions obscured the meaning of res ipsa loquitur. This confusion led our courts at an earlier stage of jurisprudential development to restrict the use of the Latin phrase "res ipsa loquitur" to those cases in which the defendant owed the plaintiff the "highest degree of care."[8] Included in this class of defendants were owners and operators of

---

[8] See, e.g., *Alexander v. Nanticoke Light Co.*, 209 Pa. 571, 58 A. 1068 (1904); 2 G. Henry, Pennsylvania Evidence § 675 (1953); Note, Res Ipsa Loquitur & Exlusive Control in Pennsylvania, 15 U. Pitt. L. Rev. 325 (1954); cf. *Pedretti v. Pittsburgh Ry.*, 417 Pa. 581, 209 A.2d 289 (1965); *Sevast v. Lancaster Yellow Cab & Baggage, Inc.*, 413 Pa. 250, 196 A.2d 842 (1964); *Ambrose v. Western Md. Ry.*, 368 Pa. 1, 81 A.2d 895 (1951). See generally 1 B. Laub, Pennsylvania Trial Guide §§ 112-14 (1959).

common carriers,[9] elevators,[10] and escalators,[11] as well as suppliers of electrical power.[12]

However, the considerations in determining the nature and extent of substantive tort duty are not necessarily the same as those underlying the evidentiary use of res ipsa loquitur. Thus, the degree of danger threatened by a particular activity may, for example, be an important reason for subjecting electric companies to the highest degree of care, but it may have relatively slight bearing on whether negligence or causation may be inferred from the circumstances of a particular electrical accident.

Our cases, therefore, have tended to constrict the types of cases in which circumstantial evidence can be used to establish either negligence or causation. For example, if a barrel fell on a pedestrian passing the defendant's warehouse, res ipsa loquitur as previously formulated in Pennsylvania would be inapplicable because the defendant owes only an "ordinary" duty of care. Cf. *Rucinski v. Cohn*, 297 Pa. 105, 146 A. 445 (1929).[13]

Having limited the use of the Latinism "res ipsa loquitur" to a small class of cases, earlier Pennsylvania tribunals—often stating that res ipsa loquitur does not apply—have achieved the same result as did Chief

---

[9] See, e.g., *Ambrose v. Western Md. Ry.*, 368 Pa. 1, 81 A.2d 895 (1951).

[10] See, e.g., *McKnight v. S. S. Kresge Co.*, 285 Pa. 489, 132 A. 575 (1926).

[11] See, e.g., *Petrie v. Kaufmann & Baer Co.*, 291 Pa. 211, 139 A. 878 (1927).

[12] See, e.g., *Alexander v. Nanticoke Light Co.*, 209 Pa. 571, 58 A. 1068 (1904).

[13] Other jurisdictions, however, still regard the case of a falling barrel as one in which negligence is provable by res ipsa loquitur. See, e.g., *Hake v. George Wiedemann Brewing Co.*, 23 Ohio St. 2d 65, 262 N.E.2d 703 (1970).

Baron Pollock by simply stating that juries may infer negligence when the evidence is circumstantial.[14] To the same end,[15] other Pennsylvania courts have utilized a unique sibling doctrine of res ipsa loquitur, "exclusive control."[16]

Unfortunately, even the cases using the formula of exclusive control have failed fully to follow Chief Baron Pollock's precepts. They have lost sight of the fact that exclusive control, like the original statement "res ipsa loquitur," is merely a recognition that circumstantial evidence may be appropriate and adequate proof in a negligence action. A number of arbitrary requirements[17] have been imposed by earlier cases, con-

---

[14] See, e.g., *Henderson v. Horner*, 287 Pa. 298, 135 A. 203 (1926); *Shafer v. Lacock, Hawthorn & Co.*, 168 Pa. 497, 32 A. 44 (1895); *Paul v. Hess Bros., Inc.*, 226 Pa. Superior Ct. 92, 312 A.2d 65 (1973); *Gable v. Golder*, 116 Pa. Superior Ct. 415, 176 A. 847 (1935); cf. *Loch v. Confair*, 372 Pa. 212, 93 A.2d 451 (1953); *MacDougall v. Ford Motor Co.*, 214 Pa. Superior Ct. 384, 257 A.2d 676 (1969).

[15] It has properly been observed that those few states, including Pennsylvania, which have limited "res ipsa loquitur" by name, "usually have been compelled to recognize, under another name, the principle of circumstantial evidence stated in [the Restatement]." Restatement (Second) of Torts § 328D, comment b (1965).

[16] See *Izzi v. Philadelphia Transp. Co.*, 412 Pa. 559, 195 A.2d 784 (1963), and cases cited therein.

[17] Thus in *Izzi v. Philadelphia Transp. Co.*, 412 Pa. 559, 195 A.2d 784 (1963), Chief Justice BELL stated: "The doctrine [of exclusive control] should be applied only where *all* of the following elements are present: (a) where the thing which caused the accident is under the exclusive control of or was made or manufactured by the defendant; *and* (b) the accident or injury would ordinarily not happen if the defendant exercised due care, or made or manufactured the article with due care; *and* (c) where the evidence of the cause of the injury or accident is not equally available to both parties, but is exclusively accessible to and within the possession of the defendant; *and* (d) the accident itself is very unusual or exceptional and the likelihood of harm to plaintiff or one of his

fining exclusive control narrowly[18] rather than recognizing it as a principle generally permitting a reasonable inference of fault to arise from the circumstances.

In Pennsylvania at least three separate companion "doctrines" of circumstantial proof have judicially evolved—res ipsa loquitur, exclusive control, and an untitled evidentiary rule of simple circumstantial evidence. The coexistence of these three means of circumstantially proving negligence and causation obscured "a simple matter of circumstantial evidence"[19] commonly known elsewhere as res ipsa loquitur. In its place highly formalistic distinctions unrelated to the functional question of the probative value of circumstantial proof were substituted.

## II.

The instant case is a clear example of the difficulty of applying this labyrinth of formal distinctions. Realistically, would a charge elaborating finely-spun distinctions—highest degree of care, ordinary care, res ipsa loquitur, exclusive control, presumption, inference —give a jury the necessary "guide and compass" with which to judge the acts of the defendants? And would

___

class could reasonably have been foreseen and prevented by the exercise of due care; *and* (e) the general principles of negligence have not theretofore been applied to such facts." Id. at 566, 195 A.2d at 788.

[18] See, e.g., *Miller v. Delaware County Memorial Hosp.*, 428 Pa. 504, 509, 239 A.2d 340, 342 (1968) (MUSMANNO, J., dissenting). See also *Banet v. Philadelphia*, 226 Pa. Superior Ct. 452, 453, 313 A.2d 253, 254 (1973) (HOFFMAN, J., Opinion in Support of Reversal, joined by CERCONE & SPAETH, JJ.), in which a strong attack was leveled at the statement in *Izzi* which foreclosed circumstantial proof in classes of cases in which plaintiffs elsewhere had been able to show negligence by direct proof.

[19] W. Prosser, Handbook of the Law of Torts § 40, at 231 (4th ed. 1971).

not a charge reflecting such distinctions be of less than helpful guidance, particularly where the probative force of the circumstantial proof was, in the trial court's judgment, at least as strong against one defendant as against the other? Faced with a single accident attributable to the negligence of either Korvette's, Otis, or both, the trial court was unable to perceive any logical reason to treat the two defendants differently.[20]

The Superior Court, however, by focusing on a formalistic distinction based on earlier confusion between substantive duty and the evidentiary worth of offered proof, held that different evidentiary rules applied to each defendant because it found substantive differences in the respective duties owed. According to that court, Korvette's negligence was provable by res ipsa loquitur because Korvette's was the owner of a common carrier and therefore owed the "highest degree of care." Finding no precedent holding one who services and maintains an escalator (duties Otis assumed by contract[21]) to owe the same highest degree of care, the Superior Court held that res ipsa loquitur was inapplicable in the case against Otis. Exclusive control was held to be the appropriate rule.[22] There-

---

[20] JUDGE WEINROTT in his written opinion stated: "It would indeed seem an anomaly to hold that the law imposed upon Korvette's a high degree of care and then have Korvette's or Otis, or both, argue that the duty was discharged by contracting to perform only ordinary care. After all, it is the public that must be protected. We charge Otis with the degree of care which the law imposes on common carriers with which it deals and that it cannot undermine this degree of care by self-imposed restrictions in a maintenance contract which will provide a lesser degree of care the result of which is to maim and injure."

[21] See note 33 infra.

[22] The reaction to the Superior Court's distinction was predicable: "Pennsylvania lawyers and judges are still swamped in the morass of technicalities which distinguish res ipsa loquitur and exclusive control. One wonders what juries comprehend about

fore, in its judgment, the trial court committed reversible error by charging the jury that a presumption of negligence could be drawn.[23]

As we have stated, historic association of questions of substantive duty with the use of circumstantial proof has previously resulted in unnecessary befuddlement of a simple legal proposition. Further endeavoring to define the contorted relationship between duty and proof of negligence can only add to existing confusion. This we will not do.[24]

Instead, we believe the time has come to reject our earlier duty-oriented doctrines of circumstantial proof and replace them with a single doctrine based on appropriate evidentiary concerns. Res ipsa loquitur is neither a rule of procedure nor one of substantive tort law. It is only a shorthand expression for circumstantial proof of negligence—a rule of evidence.

### III.

The American Law Institute articulates the desired evidentiary rule in section 328D of its Restatement (Second) of Torts (1965). Careful review and considered reflection convince us that the evidentiary rule enunciated in the Restatement is a far more realistic, logical, and orderly approach to circumstantial proof of negligence than the multiple doctrines formerly employed in Pennsylvania. Here, as in other cases,[25] this

---

the fine difference between the two doctrines." Farage & McDaid, Annual Survey of Pennsylvania Legal Developments: Tort Law, 45 Pa. B. Ass'n Q. 247, 264 (1974).

[23] See text following note 34 infra.

[24] We recognize that on this appeal Korvette's asks this Court to consider the question of res ipsa loquitur in terms of Otis' substantive duty of care.

[25] In recent years, this Court has not hesitated to adopt sections of the Restatement (Second) of Torts (1965) when our

Court accepts the persuasive authority of the Restatement, and we adopt section 328D[26] as the law of this Commonwealth.[27]

---

common-law precedents varied from the Restatement or when the Pennsylvania common law provided no answer. See, e.g., *Reitmeyer v. Sprecher*, 431 Pa. 284, 243 A.2d 395 (1968) (adopting § 357); *Philadelphia Elec. Co. v. Julian*, 425 Pa. 217, 228 A.2d 669 (1967) (adopting §§ 416 & 427); *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966) (adopting § 402A); *Jesko v. Turk*, 421 Pa. 434, 219 A.2d 591 (1966) (adopting § 339).

[26] The virtue of the Restatement rule is that when dealing with problems of proof, it abjures distinctions based on procedural questions or issues of substantive tort duty and focuses instead on purely evidentiary concerns. Because of its logical consistency, the Restatement rule "is that upon which the great majority of the American courts are now agreed." Restatement (Second) of Torts § 328D, comment a (1965). See, e.g., *Oresman v. G.D. Searle & Co.*, 321 F. Supp. 449 (D.R.I. 1971); *Schneider v. City of Phoenix*, 9 Ariz. App. 356, 452 P.2d 521 (1969); *Branco Eastern Co. v. Leffler*, 173 Colo. 428, 482 P.2d 364 (1971); *McGowen v. Tri-County Gas Co.*, 483 S.W.2d 1 (Mo. 1972); cf., e.g., *Raza v. Sullivan*, 432 F.2d 617 (D.C. Cir. 1970), cert. denied, 400 U.S. 992, 91 S. Ct. 458 (1971); *Leikach v. Royal Crown Bottling Co.*, 261 Md. 541, 276 A.2d 81 (1971); *Cusumano v. Pepsi-Cola Bottling Co.*, 9 Ohio App. 2d 105, 223 N.E.2d 477 (1967); *Provident Life & Accident Ins. Co. v. Professional Cleaning Serv., Inc.*, 217 Tenn. 199, 396 S.W.2d 351 (1965).

[27] This Court has not been reluctant to simplify, clarify, and improve the law in light of modern conditions. See, e.g., *Salvador v. Atlantic Steel Boiler Co.*, 457 Pa. 24, 319 A.2d 903 (1974); *Ayala v. Philadelphia Bd. of Pub. Educ.*, 453 Pa. 584, 305 A.2d 877 (1973); *Falco v. Pados*, 444 Pa. 372, 282 A.2d 351 (1971); *Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971); *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970); *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968); *Restifo v. McDonald*, 426 Pa. 5, 230 A.2d 199 (1967); *Nolan v. Tifereth Israel Synagogue*, 425 Pa. 106, 227 A.2d 675 (1967); *Flagiello v. Pennsylvania Hosp.*, 417 Pa. 486, 208 A.2d 193 (1965); *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964); *Sinkler v. Kneale*, 401 Pa. 267, 164 A.2d 93 (1960). This is true even when we are dealing with legal principles of long standing. For, in the words of Mr. Justice EAGEN,

Section 328D, titled Res Ipsa Loquitur, provides:

"(1)  It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

"(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

"(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

"(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

"(2)  It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

"(3)  It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached." Restatement (Second) of Torts § 328D (1965). See also McCormick's Handbook of the Law of Evidence § 342 (2d ed. E. Cleary 1972). To the extent our prior decisions are inconsistent with section 328D, they are no longer to be followed.

Section 328D not only abrogates formalistic distinctions based on substantive duty, but also eliminates another complication inherent in our prior rules. Formerly, it had been stated in some decisions that "exclusive" management or control by the defendant of the injury-producing instrumentality was a prerequisite to res ipsa loquitur or exclusive control.[28]

The Restatement rule, however, disavows the requirement of exclusive control.[29] A party's negligence

---

" 'Wisdom should never be rejected merely because it comes late.' " *Clevenstein v. Rizzuto*, 439 Pa. 397, 403, 266 A.2d 623, 626 (1970).

[28] See, e.g., *Zahniser v. Pennsylvania Torpedo Co.*, 190 Pa. 350, 42 A. 707 (1899) (res ipsa loquitur) ; *Izzi v. Philadelphia Transp. Co.*, 412 Pa. 559, 195 A.2d 784 (1963) (exclusive control).

[29] Dean Prosser advances a similar view: "There are . . . cases . . . in which it is clear that 'control' is simply the wrong word.

may be inferred when "other responsible causes . . . are sufficiently eliminated by the evidence." Restatement (Second) of Torts § 328D(1)(b) (1965). Exclusive control may eliminate other causes,[30] but the critical inquiry is not control but whether a particular defendant is the *responsible cause* of the injury. Responsibility, of course, may be shared by two or more defendants. See W. Prosser, Handbook of the Law of Torts § 39, at 221 (4th ed. 1971).[31] Consequently, if *responsibility*

---

The plaintiff who is riding a horse is in exclusive control of it, but when the saddle slips off the inference is still that it is the fault of the defendant who put it on. There is now quite general agreement that the fact that the plaintiff is sitting on the defendant's stool when it collapses, or has possession of an exploding bottle, or a loaf of bread with glass baked inside of it, or is using an appliance, which the defendant has manufactured, will not prevent the application of res ipsa loquitur when the evidence reasonably eliminates other explanations than the defendant's negligence. Some courts have said that it is enough that the defendant was in exclusive control at the time of the indicated negligence. It would be far better, and much confusion would be avoided, if the idea of 'control' were discarded altogether, and we were to say merely that the apparent cause of the accident must be such that the defendant would be responsible for any negligence connected with it." W. Prosser, Handbook of the Law of Torts § 39, at 220-21 (4th ed. 1971) (footnotes omitted).

[30] Restatement (Second) of Torts § 328D, comment g (1965).

[31] See also Restatement (Second) of Torts § 328D, comment g (1965) (emphasis added):

"*Defendant's exclusive control.* The plaintiff may sustain this burden of proof with the aid of a second inference, based on a showing of some specific cause for the event which was within the defendant's responsibility, or a showing that the defendant is responsible for all reasonably probable causes to which the event can be attributed. Usually this is done by showing that a specific instrumentality which has caused the event, or all reasonably probable causes, were under the exclusive control of the defendant. Thus the responsibility of the defendant is proved by eliminating that of any other person.

"It is not, however, necessary to the inference that the defendant have such exclusive control; and exclusive control is merely

is vested in and shared by two or more parties, each may be subjected to liability under the rule we adopt. See Restatement (Second) of Torts § 328D, comment g, illustration 8 (1965) ;[32] Annot., 38 A.L.R.2d 905 (1954) ; 58 Am. Jur. 2d Negligence § 503 (1971).

## IV.

In this case, it is clear that Otis as well as Korvette's owed Creston Gilbert a duty of care. *Evans v. Otis Elevator Co.,* 403 Pa. 13, 168 A.2d 573 (1961). Moreover, it cannot be disputed that this accident would not have occurred in the absence of negligence. Therefore, if the circumstances of the accident suffi-

---

one way of proving his responsibility. *He may be responsible, and the inference may be drawn against him, where he shares the control with another,* as in the case of the fall of a party wall which each of two landowners is under a duty to inspect and maintain. He may be responsible where he is under a duty to the plaintiff which he cannot delegate to another, as in the case of a landlord who leases premises dangerous to persons on the public highway, which his tenant undertakes to maintain. He may be responsible where he is under a duty to control the conduct of a third person as in the case of a host whose guests throw objects from his windows. It may be enough that the defendant was formerly in control, at the time of the probable negligence, as in the case of a beverage bottler whose product poisons the consumer, when there is sufficient evidence to eliminate the responsibility of intermediate dealers. Exclusive control is merely one fact which establishes the responsibility of the defendant; and if it can be established otherwise, exclusive control is not essential to a res ipsa loquitur case. The essential question becomes one of whether the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against."

[32] "A, a pedestrian on the public sidewalk, is injured by the fall of a sign from the front of a building owned by B and leased to C. Both B and C are under a legal duty to members of the public using the highway to exercise reasonable care to inspect and maintain the sign. It can be inferred that the event was due to the negligence of both B and C."

ciently eliminate "other responsible causes," it may be inferred that the harm suffered by Creston Gilbert was caused by the negligence of Otis, Korvette's, or both.

Here, the issue of responsibility was submitted to the jury. The jury found that both Korvette's and Otis were responsible for the safe operation of the escalator and that they were both negligent. Responsibility or "control" are factual questions; as such they are proper subjects for jury determination. Restatement (Second) of Torts § 328C (1965).

In evidence was the maintenance contract between Otis and Korvette's. That contract, prepared by Otis, repeatedly states that *Otis' judgment* governs questions of maintenance and care of the escalator and replacement of worn or unsafe parts.[33] Although Korvette's

---

[33] This maintenance contract in relevant part provides:

"We [Otis] will regularly and systematically examine, adjust, lubricate as required, and if, *in our judgment*, conditions warrant, repair or replace:

"Machine, motor, generator and controller parts . . . .

"We [Otis] also agree:

"To renew guide shoe gibs or guide rollers when *in our judgment* this is necessary to insure smooth and quiet operation and, except where roller guides are used, to keep the guide rails properly lubricated.

"To renew all wire ropes as often as *in our judgment* is necessary to maintain an adequate factor of safety; to equalize the tension on all hoisting ropes, and repair or replace conductor cable.

. . . .

"To examine, lubricate, adjust, and if, *in our judgment*, conditions warrant, repair or replace all accessory equipment furnished and installed by us with exceptions as stated hereinafter.

"To examine periodically all safety devices and governors and make our customary annual safety tests.

"We shall not be required to install new attachments on the escalators whether or not recommended or directed by insurance companies, or by governmental authorities, nor to make any replacements with parts of a different design. It is agreed that

had day-to-day responsibility for the safe function of the escalator, Otis by contract assumed and committed to its judgment the responsibility of regularly and systematically inspecting, servicing, repairing and maintaining for the safety of Korvette's customers the escalator it manufactured, sold, and installed. Given these record facts, this Court can only conclude, as have other courts which have examined similar facts, that the jury's finding of joint responsibility and joint negligence is supported by the evidence. Accord, *Domany v. Otis Elevator Co.*, 369 F.2d 604 (6th Cir. 1966) (Ohio law); *Vandagriff v. J. C. Penney Co.*, 228 Cal. App.2d 579, 39 Cal. Rptr. 671 (1964); *Enslein v. Hudson & M.R.R.*, 8 Misc. 2d 87, 165 N.Y.S.2d 630 (1957), aff'd as to liability and rev'd as to damages, 6 App. Div. 2d 833, 176 N.Y.S.2d 70 (1958), aff'd, 6 N.Y.2d 723, 158 N.E.2d 504, 185 N.Y.S.2d 810 (1959); see *Greet v. Otis Elevator Co.*, 187 A.2d 896 (D.C. App. 1963) (elevator); *Bond v. Otis Elevator Co.*, 388 S.W.2d 681 (Tex. 1965) (same). See also *Rogers v. Dorchester Associates*, 32 N.Y.2d 553, 300 N.E.2d 403, 347 N.Y.S.2d 22 (1973).

This was a proper case for negligence to be proved circumstantially under section 328D. The record evidence is sufficient to sustain a factual inference that plaintiff's injuries were caused by the negligent conduct of both defendants. Nevertheless, we must affirm the order of the Superior Court granting Otis a new trial.

## V.

To this point, we have not discussed the *procedural effect* of circumstantially proving fault. Due to the

---

we are not required to make renewals or repairs necessitated by reason of negligence or misuse of the machinery or apparatus, or by reason of any other cause beyond our control except ordinary wear and tear." (Emphasis added.)

previously-noted earlier confusion between circumstantial proof and an ancient common-law rule requiring carriers to prove freedom from negligence,[34] courts in this Commonwealth have generally stated that our former res ipsa loquitur rule generates a rebuttable presumption of negligence while exclusive control creates only a permissible inference. See 2 G. Henry, Pennsylvania Evidence § 675 (1953) ; but cf. *Ten Ten Chestnut Street Corp. v. Quaker State Coca-Cola Bottling Co.*, 186 Pa. Superior Ct. 585, 593, 142 A.2d 306, 309 (1958) (Exclusive control "shifts to the defendant the burden of going forward with the evidence."). This distinction, like those between our former rules concerning the availability of circumstantial proof, is based not on the probative strength of particular circumstantial evidence, but instead on the substantive duty of care of the named defendant.

When res ipsa loquitur is properly regarded under section 328D as · a simple matter of circumstantial proof, it cannot realistically be viewed differently from any other method of circumstantially proving facts in issue. See McCormick's Handbook of the Law of Evidence § 342, at 805 (2d ed. E. Cleary 1972). Circumstantial evidence in all negligence cases therefore can create only a permissible inference of fault "unless the facts are so compelling that no reasonable man could reject it." Restatement (Second) of Torts § 328D, comment m (1965).

Here, the trial court, over Otis' timely specific objection charged that the circumstances of the accident raised "a true rebuttable presumption" that the accident was due to Otis' negligence. This was error. Restatement (Second) of Torts § 328D(3) (1965).

Consequently, we conclude that the Superior Court's award of a new trial to Otis was proper and affirm its

---

[34] See text following note 7 supra.

order.[35] Upon retrial, the court will be governed by section 328D.

Order affirmed.

[35] Because the jury's verdict against defendant Korvette's is not here in issue, see note 4 supra, it is unaffected by our decision. The judgment against Korvette's remains undisturbed.

CONCURRING OPINION BY MR. CHIEF JUSTICE JONES:

I would affirm the order of the Superior Court for the reason that the trial court erred in applying the doctrine of *res ipsa loquitur* to Otis Elevator. The majority, however, has discarded the cognate doctrines recognized in this Commonwealth of *res ipsa loquitur* and exclusive control without offering any compelling reason for doing so. Additionally, the majority's resolution of the case is not responsive to the only question properly before the Court, *i.e.*, whether a company which manufactures and services an escalator may be held liable under the theory of *res ipsa loquitur* to a plaintiff who is a passenger on the escalator in the store of the owner-operator.[1] Furthermore, such a *drastic* departure from long-standing rules of law should only come about following oral argument and the submission of briefs on the advisability of such action. Finally, a change in the rules of circumstantial evidence which were developed to aid plaintiffs in tort cases should not be effected in the context of a case which at this stage involves a dispute between joint defendants whose rights and duties *inter se* are defined by contract.

[1] Article II, Section 204(a), of the Appellate Court Jurisdiction Act of July 31, 1970, P. L. 673, 17 P.S. §211.204(a), provides for appeals from final orders of the Superior Court where at least two members of this Court have voted to permit such an appeal. By per curiam order dated March 7, 1973, this Court limited its jurisdiction in the present case to consideration of this issue.

Contrary to the assertions of the majority, I believe that the Pennsylvania doctrines of *res ipsa loquitur* and exclusive control are based on appropriate evidentiary concerns and the distinctions between the two are related to the functional question of the probative value of the circumstantial evidence under the conditions in which the application of each doctrine is appropriate. In order for the doctrine of *res ipsa loquitur* to become applicable in Pennsylvania three conditions must co-exist: (1) the defendant must owe to the plaintiff a duty of the highest degree of care; (2) the instrumentality which caused the accident must be within the exclusive control of the defendant; and (3) the occurrence must be something which ordinarily would not happen if the defendant had exercised the high degree of care which the law imposed upon him. *See generally* 2 G. Henry, Pennsylvania Evidence §675 (1953). The effect of the application of this doctrine is to create a rebuttable *presumption* of liability on the defendant and to shift the *burden of proof* to the defendant to establish that the accident occurred notwithstanding his exercise of due care. *Norris v. Philadelphia Electric Co.*, 334 Pa. 161, 5 A.2d 114 (1939).

The operation of the doctrine of exclusive control depends on the existence of the following elements: (1) the instrumentality which caused the accident must have been under the exclusive control of, or made or manufactured by the defendant; *and* (2) the accident or injury is one which would ordinarily not happen if the defendant had exercised due care, or had made or manufactured the article with due care; *and* (3) the evidence of the cause of the injury or accident is not equally available to both parties, but is exclusively accessible to and within the possession of the defendant; *and* (4) the likelihood of harm to plaintiff or one of his class could reasonably have been foreseen and prevented by the exercise of due care; *and* (5) the

general principles of negligence have not heretofore been applied to such facts.[2] *Izzi v. Philadelphia Transportation Co.*, 412 Pa. 559, 195 A.2d 784 (1963). The procedural effect of this doctrine is to raise an *inference* of negligence and to shift to the defendant the burden of going forward with the evidence, thus taking all such cases to the jury. Aside from the fact that the doctrine of exclusive control is not limited in application to those cases in which the defendant owes a duty of the highest degree of care, the practical distinction between the two doctrines applied in Pennsylvania is that *res ipsa loquitur* gives rise to a factual *presumption* of negligence from the mere occurrence of an accident, whereas the exclusive control rule gives rise to an *inference* of negligence, not from the accident itself, but from the circumstances under which the injury occurred. *See Kotal v. Goldberg*, 375 Pa. 397, 100 A.2d 630 (1953). The distinctions which have given rise to two separate doctrines in Pennsylvania developed not as a result of confusion by the courts, but from the recognition that the probative force of the circumstantial evidence is stronger in cases involving common carriers where the issue is slight negligence than in

---

[2] Although I would be willing to reconsider the continued viability of this fifth condition when properly presented to the Court, this is not such a case. But for this condition, the requirements for the application of exclusive control are not dissimilar from those set forth in Restatement 2d, Torts §328D:

"(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

"(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

"(b) other responsible causes, including the conduct of the plaintiff and third persons are sufficiently eliminated by the evidence; and

"(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff."

cases where ordinary negligence is the controlling substantive standard.

As previously stated, the first prerequisite for the application of *res ipsa loquitur* in this Commonwealth is that the defendant owe the duty of the highest degree of care. As this Court noted in *Ambrose v. Western Maryland Ry. Co.*, 368 Pa. 1, 11, 81 A.2d 895, 900 (1951) : "The rule of *res ipsa loquitur* has been limited in its application by the courts of Pennsylvania to cases involving injury to passengers through transportation operations of common carriers or to patrons of utilities dispensing a service which, if not properly managed and controlled, may readily prove dangerous," citing from *Sierocinski v. E. I. DuPont de Nemours & Co.*, 118 F.2d 531, 535 (3d Cir. 1941). For purposes of our *res ipsa loquitur* rule, escalators have been held to be common carriers. *Petrie v. Kaufman & Baer Co.*, 291 Pa. 211, 139 A. 878 (1927). *See also McKnight v. S. S. Kresge Co.*, 285 Pa. 489, 132 A. 575 (1926) (elevators held to be common carriers). The impact of the holdings that elevators and escalators were common carriers is that the *owners* and *operators* thereof are to be held to a duty of the highest degree of care and that the doctrine of *res ipsa loquitur* may be applied against them.

At *no time,* however, has this Court, or any court to my knowledge, held that the conduct of a manufacturer or service contractor of an instrumentality which is a common carrier is governed by the standard of the highest degree of care. I readily recognize on the authority of *Evans v. Otis Elevator Co.*, 403 Pa. 13, 168 A.2d 573 (1961) that Otis Elevator Company owed a tort duty to the plaintiff in this case. Similarly, however, on the same authority it is clear that the duty owed by a service contractor to third parties is uniformly one of *ordinary care* and does not vacillate to

conform with the standard of care which the law has placed on the other party to the contract. Since Otis Elevator did not owe a duty of the highest degree of care, it was improper for the trial court to charge that the jury could presume negligence from the occurrence of the accident under the theory of *res ipsa loquitur*.

This Court has historically been loath to extend the doctrine of *res ipsa loquitur* and the concomitant shifting of the burden of proof. *See, e.g., Norris v. Philadelphia Electric Co.*, 334 Pa. 161, 5 A.2d 114 (1939). I am in complete accord with this salutary policy. Whether we speak in terms of degrees of negligence or not, human experience supports different treatment where a different duty is owed. Nor is a plaintiff prejudiced by such different treatment, but rather he is benefited. The doctrine of exclusive control remains available against tortfeasors not owing a duty of the highest degree of care, and in the majority of jurisdictions which do not distinguish in the application of their res ipsa loquitur doctrines an *inference* of negligence is permitted against all, but a *presumption* is permitted against none. Clearly a plaintiff in Pennsylvania is already in a favored position. Additionally, in the instant case, the plaintiff did have the benefit of the application of *res ipsa loquitur* against one defendant.

An additional issue raised in the Superior Court, and one not properly resolved there, concerns the question of joint exclusive control. The purpose of the requirement of exclusive control in both the *res ipsa loquitur* and exclusive control doctrines is that for either doctrine to be operative against a defendant, the plaintiff must affirmatively eliminate all other likely causes of the accident and other likely responsible persons. Proof that a defendant was in exclusive control of the instrumentality causing injury is thus sufficient to allow the doctrine to apply against that defendant,

assuming the other conditions are met. Although it is by no means clear, I agree with the Superior Court that our law permits a charge on joint exclusive control in the case of two or more defendants. Such a charge is limited in Pennsylvania, however, to those situations where the control of one defendant is attributable to the other.[3] Thus, in the present situation, assuming a proper charge, the jury could have found both Otis Elevator and Korvette's liable *only* if they found that Otis Elevator was in exclusive control.[4]

---

[3] The Superior Court disregards any limitation on its broad statement concerning joint exclusive control. In addition, the cases cited in support of the statement are not really pertinent. In *Bollin v. Elevator Construction Co.*, 361 Pa. 7, 63 A.2d 19 (1949), neither the doctrine of *res ipsa loquitur* nor the doctrine of exclusive control was used. In *Loch v. Confair*, 372 Pa. 212, 93 A.2d 451 (1953), this Court affirmed an order taking off a compulsory nonsuit entered in favor of one defendant, and granting a new trial against the other defendant against whom a directed verdict had been entered. This case involved an action against a store owner and a manufacturer in an exploding bottle case. *Res ipsa loquitur* was not applicable to the case and to the extent that there was loose language to the contrary, it should be disregarded. In regard to the doctrine of exclusive control, the Court found that its application would allow the case *to go to the jury* against *both* defendants. With this ruling I fully agree. Only by inference, however, can it be said that the Court, by dicta, indicated that a *verdict* returned against *both defendants* would be sanctioned where the only negligence was that inferred from the application of the doctrine. Such an inference cannot be abided. A showing that one of two defendants was in exclusive control is insufficient. *E.g., Fix v. Pennsylvania Power & Light Co.*, 346 Pa. 598, 31 A.2d 114 (1943). A verdict against defendants based on either exclusive control or *res ipsa loquitur* where the control of one is not attributable to the other indicates that *neither* is in exclusive control and is under those circumstances an unacceptable verdict.

[4] In regard to permissible verdicts, the jury should have been charged that if they found that Korvette's was in fact (as contrasted with by imputation) in exclusive control of the escalator they could find Korvette's liable under the doctrine of *res ipsa loquitur*

Since the case was not even submitted to the jury on the doctrine of exclusive control, my inclination would be to reverse the trial court's refusal to enter judgment n.o.v. in favor of Otis Elevator. However, since Otis Elevator did not appeal the Superior Court order granting a new trial, I would affirm that order.[5]

(assuming the presence of the other requirements) and if on that basis they did return a verdict against Korvette's, they *must* return a verdict in favor of Otis Elevator (the exclusive control by Korvette's precludes the possibility of finding exclusive control by Otis Elevator). The jury should further have been charged that if they found that Otis Elevator was in exclusive control of the escalator they *could* find Otis Elevator liable under the doctrine of exclusive control (assuming the presence of the other requirements) and that if on this basis they did return a verdict against Otis Elevator, they *must* also return a verdict against Korvette's (this being on the basis of the doctrine of non-delegable duty).

[5] I note that the practical effect of the Superior Court's order is to dismiss the case against Otis Elevator, since it is difficult to imagine that the plaintiff will prosecute a new trial where a valid judgment has already been obtained against Korvette's.