J-S82012-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DIEGO CORREA, AN INDIVIDUAL, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CMC GENERAL CONTRACTING, LLC, A PENNSYLVANIA CORPORATION, AND RICHARD CLARK, AN INDIVIDUAL, | |
| Appellees | No. 85 WDA 2017 |

Appeal from the Order Entered December 12, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): AR 15-001113

BEFORE:  BENDER, P.J.E., STEVENS, P.J.E.[*], and STRASSBURGER, J.[**]

MEMORANDUM BY BENDER, P.J.E.:                **FILED MARCH 14, 2018**

Appellant, Diego Correa, an individual, appeals from the trial court's order granting summary judgment in favor of Appellees, CMC General Contracting, LLC (referred to herein as CMC), a Pennsylvania Corporation, and Richard Clark, an individual.  We affirm in part, reverse in part, and remand for further proceedings.

The trial court summarized the factual background and procedural history of this case as follows:

> On December 12, 2016, this [c]ourt dismissed [Mr. Correa's] lawsuit upon [Appellees'] Motion for Summary Judgment, after

_____

[*] Former Justice specially assigned to the Superior Court.
[**] Retired Senior Judge assigned to the Superior Court.

argument and considering [b]riefs of both parties. [Mr. Correa] appeals from the dismissal.

[Mr. Correa] filed an Arbitration Complaint which sought to hold [Appellees] responsible for allegedly installing a defective roof on his residence, which caused leaks and water damage.

Mr. Correa found evidence of water leaks on his bedroom ceiling in 2011. He never discovered the source of the leak, but contracted with [Appellees] in March of 2011 to replace the entire roof. The roof was replaced in April of 2011.

[Mr. Correa] complained in July of 2012 that the roof was leaking again. [Appellees] made efforts to fix the leaks, but did not find the source. On or about August of 2015, approximately three (3) years later, [Mr. Correa] engaged Home Depot to replace the roof that [Appellees] installed in 2011, which Home Depot completed. [Mr. Correa] claims that the roof no longer leaks.

In 2015, [Mr. Correa] filed a Complaint in Arbitration against [Appellees], consisting of six (6) counts: breach of contract…,[1] negligence…, [U]nfair [T]rade [P]ractices and Consumer Protection Law[ (UTPCPL), 73 P.S. § 201-1 *et seq*,] breach of warranty and implied breach of warranty.

An Arbitration Hearing was held November 12, 2015, wherein [Mr. Correa] produced no expert witness that [Appellees'] work caused the roof to leak and subsequent water damage. Rather, [Mr. Correa] offered his own admittedly lay opinion and speculated that the spacing of the shingles at 6", instead of 5", and the lack of an ice/water dam was the sole cause of the leak. [Mr. Correa] admits that he did not engage [Appellees] to find the leak, merely to replace the entire roof. He conceded that he himself has no expertise in roofing or the matter of the cause of the leak or that it was something [Appellees] did in replacing the roof which caused the leak.

> Q: Mr. Correa – and I am not trying to sound offensive or anything. Are you a roofer?
>
> A: No, I am not.

---

[1] Mr. Correa filed separate breach of contract counts against Appellee CMC and Appellee Clark.

Q: So, you don't consider yourself an expert on any roofing or shingles or anything like that?

A: Well, I've learned a lot since this happened, but–

Q: You don't consider yourself an expert?

A: I am not an experienced roofer or an expert, no.

Despite the lack of any expert testimony to support [Mr. Correa's] speculation, the panel awarded $35,000.00 to him. During the hearing, [Appellees] learned the identity of the Home Depot installation specialist, Mike Boyle,[2] who replaced the roof in 2015.

Mike Boyle was deposed. When he arrived at [Mr. Correa's] home to examine the roof, the entire roof which [Appellees] installed had already been torn off and placed in the dumpster. The only portion remaining was the plywood layer. Because Home Depot's policy was to remove all water damaged plywood and replace it, Mike Boyle thoroughly inspected it. He testified that if the roof had in fact been leaking, the plywood would have evidence of any water damage.

A: If the roof has had a leak, it's very evident. The material is real "punky," as we say. If it's plywood, a lot of time it's delaminating other black spots from the water, sitting there for a lengthy period of time. There was no evidence [of] any issues with the roof at the time. We didn't replace any material on the existing roof.

[***]

A: From what I saw, there was no evidence that the roof was leaking.

Q: And you're basing that solely by looking at the plywood?

A: Yes.

Q: So, in all instances were [sic] a roof is leaking, the plywood has to show some signs of it?

---

[2] In their briefs, the parties refer to the installation specialist as Mike Boyd, not Mike Boyle. *See* Mr. Correa's Brief at 15; Appellees' Brief at 9 n.4. Our review of the record indicates that Boyle is the correct last name.

A: In most cases, yes. There's usually water marks in the plywood, depending on the plywood, it could be delaminating. Depending on how long it has leaked, it could be rotted. There's usually ways we can usually see.

Q: Did you see the entire plywood of the roof?

A: Yeah, we walked the whole roof.

Q: So, you saw it entirely exposed?

A: Yes.

Based upon his experience and a visual inspection of the entire plywood roof, Mike Boyle was unable to find any roof leakage from the roof installed by [Appellees].

Trial Court Opinion (TCO), 3/8/2017, at 2-4 (internal citations to record omitted).

As mentioned *supra*, the trial court granted summary judgment in favor of Appellees on all of Mr. Correa's claims. Thereafter, Mr. Correa filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court subsequently issued a Rule 1925(a) opinion.

Presently, Mr. Correa raises the following issues for our review:

1. Whether the facts, including but not limited to [Appellees'] implicit affirmation that the cause of Mr. Correa's damages was a leak in the roof, the testimony of Mr. Correa[,] and the fact that a subsequent roof replacement corrected the leakage[,] establish[] a genuine issue of material fact which must be resolved by a fact-finder?

2. Whether the facts presented warrant denial of [Appellees'] Motion for Summary Judgment under a *Res Ipsa Loquitur* theory?

3. Whether the failure to raise, mention and/or argue a count in an argument for summary judgment precludes dismissal of that [c]ount and/or whether the available evidence

establishes a genuine issue of material fact so as to require consideration by a fact-finder?

Mr. Correa's Brief at 3.

Initially, we set forth our standard of review:

[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt. On appellate review, then, an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is de novo. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

***Kennedy v. Robert Morris University***, 133 A.3d 38, 41 (Pa. Super. 2016) (citation omitted).

In his first issue, Mr. Correa argues that "the facts, including but not limited to [Appellees'] implicit affirmation that the cause of Mr. Correa's damages was a leak in the roof, the testimony of Mr. Correa[,] and the fact that a subsequent roof replacement corrected the leakage[,] establish[] a genuine issue of material fact which must be resolved by a fact-finder[.]" ***See*** Mr. Correa's Brief at 3. Relatedly, he claims that no expert is needed to establish that Appellees' work caused his damages, as "[o]ne need not be a

physicist to understand that rainwater does not fall upon the earth and rise up to enter through the ceilings of Mr. Correa's second floor rooms." *Id.* at 13. We address these contentions in turn.

To begin, with regard to his breach of contract and negligence claims, Mr. Correa argues that he has presented sufficient evidence to establish a genuine issue of material fact that must be resolved by a fact-finder. *See id*.[3] We reiterate that Mr. Correa alleges, *inter alia*, that Appellees breached the contract to replace his roof by failing to act with reasonable care and competence, and were negligent in failing to perform work which prevented water from entering into the premises.[4] *See* Complaint, 3/9/2015, at ¶¶ 15, 25. He advances that a genuine issue of material fact exists for those claims because: (1) Appellees "established by its actions its belief as to the cause of the leaks and the fact that it would repair said leaks by replacing the roof[,]" *id.* at 15;[5] (2) Mr. Correa testified at arbitration that — though there was

---

[3] As discussed further *infra*, Mr. Correa argues that Appellees did not include his breach of warranty and UTPCPL claims in their motion for summary judgment. *See* Mr. Correa's Brief at 19-20.

[4] Appellees point out that they were "hired by Mr. Correa solely to replace the roof, not to investigate or locate the cause of the existing water leaks." Appellees' Brief at 4 (citation omitted). *See also* TCO at 3 ("[Mr. Correa] admits that he did not engage [Appellees] to find the leak, merely to replace the entire roof.").

[5] To elaborate, Mr. Correa claims that he "contracted with [Appellees] to replace a roof in order to correct a problem with a leaking roof. Implicit in the acceptance of this contract is the acceptance by [Appellees] that the problem addressed, leakage, was the result of a bad roof." Mr. Correa's Brief at 13.

water damage before Appellees worked on the roof — the water damage became worse after Appellees' roofing work, *see id.* at 9-10, 15;[6] and (3) a subsequent repair of the roof by another contractor did stop the leakage, *id.* at 15. Yet, none of this evidence establishes that — or explains how — Appellees' work on the roof *caused* the leaking, particularly given that Mr. Correa had struggled with leaks before Appellees' work commenced. Further, the trial court acknowledges that, although Mr. Correa suggests that the leak occurred because Appellees allegedly failed to install an ice/water dam and improperly spaced the shingles, Mr. Correa "did not preserve the roof for examination prior to filing this lawsuit, so potential witnesses beyond [Mr. Correa] himself had no means to find fault with the roof or associate its condition in any way with [Mr. Correa's] description of a potential roof leak." TCO at 5; *see also* Mr. Correa's Brief at 8.

Next, Mr. Correa contests whether he needed an expert to prove causation. He states, "[e]xpert testimony is required only where the subject matter is beyond the scope of understanding of a jury. Nothing about the leaky roof is so complex as to require an expert." *Id.* at 6. He cites to *Storm v. Golden*, 538 A.2d 61 (Pa. Super. 1988), for the proposition that "[e]xpert

---

[6] *But see* Appellees' Brief at 7 ("This argument assumes … that the source of the water damage was water leaking from a roof and, in particular, the roof [Appellees] installed. The argument fails to take into account the other possible causes or sources for water leaking into one's residence, including gaps in [the] exterior of the residence, fascia, soffit vents, deteriorated bricks or mortar, faulty plumbing or ventilation systems, and the real possibility that the pre-existing water damage simply worsened over time independent from any action of [Appellees].").

testimony becomes necessary when the subject matter of the inquiry is one involving special skills and training not common to the ordinary lay person." *Id.* at 64 (citations omitted); *see also* Mr. Correa's Brief at 12. Moreover, he points out that expert testimony as to causation is not required "where there is an *obvious* causal relationship between the injury complained of and the alleged negligent act." Mr. Correa's Brief at 11 (quoting **Matthews v. Clarion Hospital**, 742 A.2d 1111, 1112 (Pa. Super. 1999) (emphasis in original; citation and internal quotation marks omitted)).

We disagree with Mr. Correa that expert testimony was unnecessary here. As Appellees aptly explain:

> Mr. Correa identifies two potential areas where [Appellees] may have deviated from the installation contract: 1) installation of the ice/water dam and 2) installing the shingles with a 6-inch instead of a 5-inch overlap. However, the record is devoid of any evidence, including the opinion of an expert witness, supporting his position that these deviations, if true, caused the water damage alleged in this case.
>
> The installation of a residential roof and the investigation of the source of water damages requires some technical expertise and construction experience. [Mr. Correa] is essentially arguing that if the inside of a home is damaged, it must necessarily be from water leaking from the roof. While experience teaches that water entering the home will cause damage, the issue raised by [Mr. Correa's] claims is whether his particular damage is caused by water entering from a leaky roof. And, if so, whether the leak was from the existing roof or the roof installed by [Appellees]. Whether the installation of ice/water protection or the spacing of shingles caused [Mr. Correa's] property damage[] requires knowledge and experience beyond that possessed by an average person. This is especially true when [Mr. Correa's] property was already damaged by water.

Appellees' Brief at 4-5 (footnote omitted).[7]

We concur with Appellees' analysis, and do not find the causal relationship between Appellees' work and Mr. Correa's damages to be so obvious as to eliminate the need for expert testimony. Additionally, as mentioned above, Mr. Correa did not preserve the roof installed by Appellees for examination prior to filing this lawsuit. *See* TCO at 5. Because Mr. Correa has proffered no evidence to establish that Appellees' work caused the water damage he experienced, the trial court did not err in granting summary judgment in favor of Appellees on this basis.

In his second issue, Mr. Correa argues that, "[w]hen considered pursuant to a theory of *[r]es [i]psa [l]oquitur*, there exists sufficient evidence of causation so as to survive a [m]otion for [s]ummary [j]udgment." Mr. Correa's Brief at 17. Mr. Correa insists that "ongoing leakage does not ordinarily occur after a contractor has been hired to repair the condition in the absence of negligence." ***Id.*** at 18-19. He cites to ***Quinby v. Plumsteadville Family Practice, Inc.***, 907 A.2d 1061 (Pa. 2006), which explains:

> *Res ipsa loquitur* allows juries to infer negligence from the circumstances surrounding the injury. *Res ipsa loquitur*, meaning literally "the thing speaks for itself," is "a shorthand expression for circumstantial proof of negligence—a rule of evidence." ***Gilbert v. Korvette, Inc.***, 457 Pa. 602, 327 A.2d 94, 99 (1974). It is a rule that provides that a plaintiff may satisfy his burden of

---

[7] ***See also*** TCO at 5 ("In order to make out a prima facie case, it was [Mr. Correa's] burden to prove that [Appellees] caused a leak and water damage by installing shingles at 6 [inch] overlap and not installing an[] ice/water dam. … [Mr. Correa] not only did not offer expert evidence to prove [Appellees'] alleged work caused a leak, [Mr. Correa] offers his own uneducated opinion.").

producing evidence of a defendant's negligence by proving that he has been injured by a casualty of a sort that normally would not have occurred in the absence of the defendant's negligence. WILLIAM L. PROSSER, LAW OF TORTS §§ 39, 40 (4th ed. 1971) (calling *res ipsa loquitur* a "simple matter of circumstantial evidence"). As noted, the Restatement (Second) of Torts § 328D formulates the evidentiary theory of *res ipsa loquitur* as follows:

> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
>
>> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
>>
>> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
>>
>> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.
>
> (2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.
>
> (3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

> Rest. (Second) Torts § 328D. **See also Gilbert**, 457 Pa. 602, 327 A.2d 94 (adopting *res ipsa loquitur* as defined in the Restatement (Second) of Torts § 328D).

**Quinby**, 907 A.2d at 1071 (footnotes omitted); **see also** Mr. Correa's Brief at 17-18.

The trial court rejected Mr. Correa's *res ipsa loquitur* theory, pointing to the Restatement (Second) Torts § 328D(1)(b), **supra** ("It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when … other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence[.]"). The trial court

observed that Mr. Correa did not present evidence to sufficiently eliminate other responsible causes, as Mr. Correa's argument "fails to acknowledge that the pre-existing leakage[,] which was not remedied by the new roof, was possibly the result of some cause or condition of another area of the home which remains unknown…." TCO at 5. In response, Mr. Correa advances that "the plaintiff is not required to exclude all other possible conclusions beyond a reasonable doubt, and it is enough that he makes out a case from which the jury may reasonably conclude that the negligence was, more probably than not, that of the defendant." Mr. Correa's Brief at 19 (quoting Restatement (Second) of Torts § 328D (1965) (Comment f)).

Again, we disagree with Mr. Correa's argument. As Appellees persuasively set forth:

> Prior to contracting with [Appellees] for the replacement roof, Mr. Correa suffered water damage to the inside of his residence. He did not hire anyone to repair that damage, or investigate the cause of that damage. He simply assumed his original roof was leaking water and needed to be replaced. The record is devoid of any evidence eliminating other possible causes for the water leaking into Mr. Correa's residence. Although Mr. Correa correctly contends that he isn't required to exclude all other possible causes, he fails to exclude even one (1) other possible cause of the water damage. Section 328(D)(1)(b) requires that other causes be "sufficiently" eliminated from consideration by the evidence, thus placing a burden upon [Mr. Correa] to diligently investigate those other causes before claiming eligibility for the causal inference inherent in the theory of *rea ipsa loquitur*. [Mr. Correa] failed to diligently investigate any other responsible causes, including any potential failure to mitigate or repair the pre-existing water damage.

Appellees' Brief at 11-12 (internal citations omitted).

- 11 -

Mr. Correa has not sufficiently eliminated other possible causes for the water damage, and we cannot conclude that Appellees' roofing more probably than not caused the water damage to Mr. Correa's home. Accordingly, we determine that Mr. Correa cannot invoke the doctrine of *res ipsa loquitur* here.

In his third issue, Mr. Correa states that "[t]he [t]rial [c]ourt erred when it failed to limit the award of [s]ummary [j]udgment to those charges raised in the [m]otion filed by [Appellees]." Mr. Correa's Brief at 19. Mr. Correa claims that, although Appellees' only mention of Mr. Correa's claims relating to breach of warranty and UTPCPL "was to recognize their existence in the [c]omplaint[,]" the trial court nevertheless granted summary judgment in favor of Appellees on those claims. *Id.* at 20. Further, in addition to exceeding the scope of Appellees' summary judgment motion, Mr. Correa claims that the evidence establishes material issues of fact which render summary judgment on his breach of warranty and UTPCPL claims improper. *See id.*

We reverse the trial court's entry of summary judgment in favor of Appellees on Mr. Correa's breach of warranty and UTPCPL claims, and remand for further proceedings. Appellees' motion for summary judgment appears to us to challenge only Mr. Correa's negligence and breach of contract claims, while barely even acknowledging his breach of warranty and UTPCPL claims. We are unsure whether Appellees intended to exclude discussion of those claims, mistakenly overlooked them, or aimed to include them but did not do so clearly enough. In any event, Appellees do not present any argument in

- 12 -

their brief to convince us that their motion for summary judgment indeed encompassed such claims, and the trial court's Rule 1925(a) opinion does not address this issue despite Mr. Correa's raising it in his Rule 1925(b) statement. While we recognize that it will be difficult for Mr. Correa to succeed on his breach of warranty and UTPCPL claims given the lack of causal connection between Appellees' work and the water damage, we note that Mr. Correa has raised a claim under the Home Improvement Consumer Protection Act, 73 P.S. § 517.1 *et seq.*, which he says amounts to a violation of the UTPCPL.[8] **See** Mr. Correa's Brief at 19-21. Because the parties have not argued issues specifically pertaining to breach of warranty and the UTPCPL before the trial court, and the trial court has not appeared to have considered those claims, we remand this matter so that the trial court may address them in the first instance. **See Branton v. Nicholas Meat, LLC**, 159 A.3d 540, 561-62 n.21 (Pa. Super. 2017) (remanding case so that the trial court could rule on the issue in the first instance).

Order affirmed in part and reversed in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

_____

[8] Specifically, Mr. Correa claims that Appellees' contract did not contain, *inter alia*, required information regarding insurance coverage under 73 P.S. § 517.7(a)(11). **See** Mr. Correa's Brief at 20-21.

- 13 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/14/2018